OPINION OF THE COURT
Harold J. Rothwax, J.
The issue to be resolved is whether, in the factual context of this case, the court may properly dismiss an indictment because, after two or more successive trials, juries have been unable to agree on a verdict.
The defendants herein move to dismiss the indictment, charging them with the crimes of murder in the second degree (Penal Law, § 125.25, subd 1) and attempted murder in the second degree (Penal Law, §110.00), arising from the death by the shooting of one John Burwell and the shooting of one Robert Robinson on January 12, 1979, on the ground that continued prosecution would subject them to double jeopardy, would constitute cruel and unusual punishment, and would not be in the interest of justice. (US Const, 5th, 8th, 14th Arndts; CPL 210.40.) The history of this prosecution began with the defendant Kirby’s initial trial for these charges in March, 1980. The defendant Franklin had not then been apprehended. A mistrial was
*907 declared when the jury, after having been sequestered overnight and having deliberated for two days, stood 10 to 2 for conviction but were, nonetheless, unable to agree upon a verdict. In October, 1980 Franklin was joined in the instant superseding indictment. This indictment has been submitted twice for verdict in February-March, 1981 and again in October-November, 1981. At the conclusion of the second trial, which lasted over a month, the jury stood evenly divided as to Kirby, and 8 to 4 for acquittal as to Franklin, when the mistrial was declared. The third trial, which lasted five weeks, resulted in a vote of 10 to 2 for conviction as to both defendants after a day and a half of deliberations, when a mistrial was again declared. In each instance the defendants concurred in the mistrial. This court has been informed by the Justice who presided over the most recent trial that the prosecution’s case was expertly presented and that in his opinion there is little likelihood that any jury would in the future reach unanimous agreement as to the charges. There is no assertion by the prosecutor that any new or additional evidence will be forthcoming should the matter be tried a fourth time. This court is familiar with the professional competence of the Assistant District Attorney who has represented the People before the Grand Juries and in the three previous trials. She is of the highest calibre both in the preparation and in the presentation of the prosecution’s case. None of these trials was infected by error or confusion to which the juries’ inability to agree might be attributed. The fatal flaw in the prosecution’s case is, in the opinion of the Justice who presided at the last trial, the credibility of the prosecution’s principal witness, Robert Robinson, who is the confessed killer of a close friend of Kirby and who also, apparently, is the paramour of Kirby’s girlfriend.
The People now move for a fourth trial as to the defendant Kirby and a third trial as to the defendant Franklin, pursuant to GPL 310.60. The People argue that they have the statutory right to retry the indictment and that there is no constitutional impediment to a retrial upon the facts of this case.
The court rejects the defendants’ Eighth Amendment claim, since reprosecution after the declaration of a mis *908 trial is not punishment in any constitutional sense. (See People v Broadie, 37 NY2d 100.) Nor is the court persuaded by the defendants’ interest of justice argument since the crimes charged in the indictment are the most serious, the harm caused by the alleged acts is irredeemable, both defendants have long records of continued violence and there is not a scintilla of evidence that the prosecutions are motivated by bad faith or that the conduct of the trials has been unfair to the accused. In the absence of other aggravating circumstances, the failure of successive juries to agree on a verdict does not “clearly demonstrate” that an eventual conviction “would constitute or result in injustice” (CPL 210.40; see People v Zagarino, 74 AD2d 115).
The court is, furthermore, constrained by precedent to agree with the prosecution that a new trial is not, in this context, prohibited by the double jeopardy clause. (Cf. Preston v Blackledge, 332 F Supp 681.) The double jeopardy clause of the Fifth Amendment to the United States Constitution, which is fully applicable to the States through the due process clause of the Fourteenth Amendment {Benton v Maryland, 395 US 784) does, in certain instances, prohibit reprosecution even though the initial prosecution did not result in a verdict and no punishment has been imposed. (Price v Georgia, 398 US 323.) Examples of prohibition against retrial in this context are where the trial court improperly declares a mistrial without the requisite high degree of necessity (People v Michael, 48 NY2d 1; Matter of Torres v Justices of Supreme Ct. of State of N. Y., 82 AD2d 892) or where the failure to submit the case to the jury is due to the prosecutor’s error or malfeasance. (Downum v United States, 372 US 734, 736; United States v Dinitz, 424 US 600, 611.) In such cases, the defendant has been deprived of his “valued right to have his trial completed by a particular tribunal” without a constitutionally significant reason. (Wade v Hunter, 336 US 684, 689.) There are other contexts, however, where circumstances manifest to the trial court necessitate the termination of prosecution before its completion in order to preserve “the public’s interest in fair trials designed to end in just judgments” (Wade v Hunter, supra, at p 689; Arizona v Washington, 434 US 497). Examples of “manifest neces *909 sity” for mistrial include obvious juror bias or other circumstances making a fair completion of the trial impossible (see People v Zagarino, supra; Simmons v United States, 142 US 148; Downum v United States, supra), or reversal after conviction for trial error or other technical procedural defects having no bearing upon the factual guilt or innocence of the accused. (See, e.g., United States v Scott, 437 US 82, 92-93; People v Key, 45 NY2d 111; Illinois v Somerville, 410 US 458, 463; cf. People v Mayo, 48 NY2d 245; Burks v United States, 437 US 1.) Declaration of a mistrial where, despite legally sufficient evidence, a jury is unable to agree upon a verdict after due deliberation and where it appears to the trial court after appropriate inquiry that continued deliberation would not result in unanimity, has been characterized as the “classic example” of manifest necessity. (United States v Perez, 9 Wheat [22 US] 579, 580; Wade v Hunter, supra; Arizona v Washington, supra; cf. Preston v Blackledge, supra; see Propriety of Court’s Dismissing Indictment or Prosecution Because of Failure of Jury to Agree After Successive Trials, Ann., 4 ALR4th 1274.)
It is important to note, in this context, that on each occasion when a mistrial was declared the jury had made earnest efforts to achieve a verdict, the trial court encouraged the jurors to agree if possible, and the mistrial was declared only after the court had ascertained that further deliberation would be futile and then only with the defendants’ consent. (Cf. United States ex rel. Webb v Court of Common Pleas of Philadelphia County, 516 F2d 1034; Carsey v United States, 392 F2d 810.) Accordingly, there is no basis for dismissal under the double jeopardy clause.
Despite the assessment of the most recent of the experienced Justices who presided over this case at trial, after hearing the testimony of witnesses first hand, that no jury would unanimously credit the testimony of the chief witness for the prosecution, the Justice had no statutory basis for dismissing the indictment. It was not his function to “weigh the evidence or assess the credibility of witnesses” when called upon to judge the merits of a motion to dismiss (CPL 290.10, 70.10, subd 1). The Trial Judge could do no more than determine whether “the evidence and inferences *910 therefrom most favorable to the prosecution would warrant the jury’s finding the defendants guilty beyond a reasonable doubt” if the jury were to credit the witnesses. (Burks v United States, 437 US 1, 16, supra.)
This case, accordingly, presents what appears to be an intractable problem. Despite diligent efforts by all participants in the litigation, the case has been submitted to three competent juries over a period of two years to no avail. Although the defendant Franklin has been tried only twice, the evidence against both defendants is substantially the same, and one third of the deliberating jurors have failed to find the evidence against Franklin persuasive beyond a reasonable doubt. The issue has thus become whether continued trials in the absence of any new evidence will serve the purposes of a fair and reasonable administration of the criminal laws.
Other courts, faced with similarly intractable cases, have recognized limits to the number of attempts that may be made to convict an accused, despite the existence of manifest necessity in the termination of each previous prosecution. In United States v Castellanos (478 F2d 749, 753, n 4) the United States Court of Appeals acknowledged, in principle, that successive prosecutions, although permissible within the strictures of double jeopardy, might constitute “‘trial by attrition’” in violation of the due process clause, of the Fourteenth Amendment. In Preston v Blackledge (332 F Supp 681, 686-687, supra) the court observed that a fifth trial, after four previous trials had resulted in hung juries, enhanced the possibility that even though innocent, the accused may be found guilty. In United States v Ingram (412 F Supp 384, 386) the court reasoned, apart from double jeopardy principles, that a third trial after two previous jury disagreements, in the absence of new evidence, would amount to a disregard of the reasonable doubt standard. (See, also, Green v United States, 355 US 184, 187-188.)
There is no other reported case in this jurisdiction, to this court’s knowledge, where dismissal has been sought exclusively upon the ground that two or more successive juries have failed to reach a verdict upon substantially the same evidence. (Cf. People v Schmetterer, 50 NYS2d 297, *911 299 [one previous trial]; People v Zagarino, 74 AD2d 115, supra [three mistrials due to error]; People v Baker, 70 Misc 2d 986 [original conviction reversed for error].) In an analogous context, however, the Legislature has prohibited representation of a charge previously dismissed by the Grand Jury without judicial authorization. (CPL 190.75, subd 3.) At common law a prosecutor could repeatedly submit a charge to successive Grand Juries until an indictment was obtained. This power was curtailed by section 270 of the Code of Criminal Procedure (L 1946, ch 149, § 9), which required judicial authorization for resubmission. Finally, with the enactment of the CPL, the prosecution was limited to a single representation, even with judicial authorization. (L 1962, ch 698, § 6.) The practice of repeated resubmission of a charge to successive Grand Juries was characterized as “contrary to the spirit of our criminal law” (People ex rel. Flinn v Barr, 259 NY 104, 109; see Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.75, p 175). This practice was discontinued despite the recognition that a majority of grand jurors who heard the evidence (i.e., 11 of 16) may have voted to indict in the first instance. (CPL 190.25, subd 1; Code Grim Pro, § 224.) One factor to be considered by the Presiding Justice in exercising his discretion to allow representation in this context is the absence or availability of new evidence not previously submitted. (People v Martin, 71 AD2d 928.)
The court recognizes, of course, the difference in evidentiary standards, and the functional difference, between the grand and petit jury. Nonetheless, the fundamental considerations of fairness to the accused and of the reasonable utilization of judicial resources are similar in both contexts. As the Supreme Court noted in Green v United States (355 US 184, 187-188, supra) an “idea * * * deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though *912 innocent he may be found guilty.” This consideration is particularly appropriate in cases where the issue of guilt has repeatedly been submitted to the trier of fact to no avail. (Cf., e.g., United States v Scott, 437 US 82, 98, n 11, supra.) Courts in other jurisdictions have noted that repeated trials of the same offense do not promote the search for truth, but rather frustrate the administration of justice by resulting in perfunctory presentations, exaggeration of subtle differences in recollection to challenge credibility; the tailoring of testimony to produce the desired result; depletion of the financial resources of the accused; a disproportionate burden on the resources of the State in a particular case; and a severe hardship to witnesses. (Carsey v United States, 392 F2d 810, 812-814, supra [majority and concurring opns]; United States v Ingram, 412 US 384, 386, supra.)
Implicit in the Supreme Court’s holdings on double jeopardy cases is the recognition of discretion in the trial court to dismiss an indictment where it appears that further prosecution would be futile. (Green v United States, supra, at p 187; Wade v Hunter, 336 US 684, 689, supra.) Since it is the public’s interest in fair trials and just verdicts that is served when a trial is aborted and reprosecution is permitted under the standards of the double jeopardy clause (Wade v Hunter, supra, at p 689), courts also must have the discretion, as in the case of Grand Jury presentations, to prohibit further prosecution where it appears that a just verdict, or any verdict, is unattainable. This authority was explicitly recognized by the Supreme Court of Tennessee in State v Witt (572 SW2d 913 [Tenn]), where the trial court dismissed an indictment after three previous trials had resulted in divided juries, despite sufficient evidence competently presented. The court held (p 917), apart from constitutional principles, that “trial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where, as here, repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and that the probability of continued hung juries is great.”
*913 Requiring defendants to face additional juries with the continuing prospect of no verdict offends traditional notions of fair play and substantial justice.
This opinion is not to be construed as fixing the permissible or impermissible number of mistrials caused by deadlocked juries. The relevant principles must be applied on an ad hoc basis. The court is not announcing a per se rule or applying a formula mechanically. The sound judicial discretion of a Trial Judge to terminate a criminal prosecution is a power that ought to be used with the utmost caution and then only where the circumstances clearly justify such action.
This court, in the absence of contrary authority within its jurisdiction, adopts the reasoning of the Tennessee Supreme Court in Witt (supra). Based upon the results of the three previous prosecutions in this matter, and upon the considered judgment of the Justice before whom this case was most recently tried, and upon this court’s evaluation of the improbability of a unanimous verdict in future trials, the indictment herein is dismissed.