457 So.2d 446 (1984)
Ex parte Josephus ANDERSON. (Re Ex parte Josephus Anderson. Petition for Writ of Mandamus or in the Alternative for Writ of Certiorari.
(In re State of Alabama v. Josephus Anderson)).
83-551.
Supreme Court of Alabama.
September 28, 1984.
William N. Clark of Redden, Mills & Clark, Birmingham, for petitioner.
Charles A. Graddick, Atty. Gen., and William D. Little, Asst. Atty. Gen., for respondent.
PER CURIAM.
This review initially arose from a petition for writ of mandamus, or in the alternative, petition for writ of certiorari, filed by the petitioner, Josephus Anderson, in the Court *447 of Criminal Appeals. The petitioner sought to prevent his further prosecution and fourth trial for the capital murder of a Birmingham police officer. The Court of Criminal Appeals, 457 So.2d 435, denied the relief sought and the petitioner is now before this court on a writ of certiorari.
The facts of this case are as follows:
The petitioner, Josephus Anderson, was indicted on December 7, 1979, in Jefferson County for the November 29th capital murder of Officer Albert Eugene Ballard. The petitioner was charged under § 13-11-2(a)(5), Alabama Code 1975. Following the petitioner's motion for a change of venue, the case was transferred to the Circuit Court of Mobile County.
Anderson was first tried during the week of March 16, 1981. The trial judge, Joseph M. Hocklander, declared a mistrial after the foreperson of the jury notified the court that the jury could not reach a verdict. The trial had consumed approximately four days. The jury had deliberated for approximately four hours. There is no indication that there were any objections to the declaration of a mistrial, although defense counsel asked the court, out of the presence of the jury, whether the court was going to allow any further deliberations. The court did not allow any further deliberations. When the mistrial was declared, the jury stood ten for acquittal and two for conviction.
Anderson's second trial took place during the week of November 2, 1981. The trial lasted four days. Although the trial judge, Telfair Mashburn, encouraged the jury to reach a verdict, they were still unable to reach a unanimous verdict after approximately seven hours of deliberation; the trial court declared a mistrial after being advised by the foreperson that the jury could not reach a verdict. There is no indication that there were any objections to the declaration of the mistrial. After deliberating, the jury stood nine for acquittal and three for conviction.
Anderson was tried again during the week of March 28, 1983. Judge Mashburn again presided. This trial consumed approximately five days. Defense counsel requested a mistrial on the grounds that some law books were in the jury room when the jury was deliberating. This was denied, however, upon ascertaining that none of the jurors had looked at the books. After the jury had deliberated for approximately four and one-half hours, the foreperson informed the court that the jury was unable to reach a unanimous verdict. The court then declared a mistrial. At the conclusion of this trial, the jury stood eight for acquittal and four for conviction.
There is no indication that the state intends to present any new evidence at Anderson's fourth trial.
At the conclusion of each trial, Anderson filed a plea of former jeopardy, or in the alternative, a motion to dismiss. Following the third trial, the defendant also filed a motion for judgment of acquittal. Hearings were held on all of these motions and all motions were denied.
In denying the defendant's plea of former jeopardy after the second trial, Judge Mashburn strongly stated his belief that the defendant was guilty. He said:
[If] there was some doubt about his guilt in my mind, I might consider your motion, Mr. Clark. But since I'm convinced he is guilty from the evidence I heard, I'm going to deny your motion.
Upon denying all three motions after the third trial, Judge Mashburn stated:
[A]s I say, being convinced as I am of the guilt of the defendant, I might be inclined to grant your motion if there was in my thinking any possibility of a jury finding this man not guilty. But I, for the life of me, I can't understand how reasonable people had any reasonable doubt of his guilt. For that reason, I'm going to deny your motion.
Anderson has been represented by the same appointed counsel in each trial, in the mandamus proceeding, and on this review.
Anderson asserts here that a fourth trial of this case would violate his constitutional privilege against double jeopardy and his right of due process under the law. The *448 issues to be decided in this case are as follows:
1) May a defendant be tried a fourth time following three prior trials which have ended in mistrials, without violating the prohibitions against double jeopardy under the 5th and 14th Amendments of the Constitution of the United States and Article I, § 9, of the Alabama Constitution of 1901; and 2) Would such a fourth trial violate the constitutional concept of due process?

I.
The forerunner of the decisions concerning whether a defendant may be tried again for the same offense after an earlier trial has ended in a mistrial is United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). The Court set out the following standards in determining whether a valid claim of double jeopardy existed:
We are of the opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defense. We think, that in all cases of this nature, the law has invested the courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with great caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.
Perez, 22 U.S. (9 Wheat.) at 580, 6 L.Ed. 165.
The "prototypical example" of a case meeting the "manifest necessity" standard of Perez is the hung jury. Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Court stated:
Where the trial is terminated over the objection of the defendant, the classical test for lifting the double jeopardy bar to a second trial is the "manifest necessity" standard first enunciated in Justice Story's opinion for the Court in United States v. Perez, 9 Wheat. 579, 580 [6 L.Ed. 165] (1824). Perez dealt with the most common form of "manifest necessity"; a mistrial declared by the judge following the jury's declaration that it was unable to reach a verdict. While other situations have been recognized by our cases as meeting the "manifest necessity" standard, the hung jury remains the prototypical example. See, e.g., Arizona v. Washington, 434 U.S. 497, 509 [98 S.Ct. 824, 832, 54 L.Ed.2d 717] (1978); Illinois v. Somerville, 410 U.S. 458, 463 [93 S.Ct. 1066, 1070, 35 L.Ed.2d 425] (1973).
456 U.S. at 672, 102 S.Ct. at 2087. In the present case, the defendant made no objections to the declaration of any mistrial and therefore the argument that this case meets the "manifest necessity" standard is even stronger.
The basic reason for allowing a plea of former jeopardy and not permitting a retrial has been to prevent "a prosecutor or judge from subjecting a defendant to a second prosecution by discontinuing the trial when it appears that the jury may not convict." Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957).
In Clements v. State, 390 So.2d 1131, 1132 (Ala.Crim.App.), cert. denied, Ex parte Clements, 390 So.2d 1136 (Ala.1980), the court held that "a jury's inability to agree either on a verdict or punishment is a proper reason for the declaration of a mistrial. After such a mistrial, the retrial of the defendant is not barred by double jeopardy." *449 (Citations omitted.) It has also been held in Alabama that a "mistrial is no trial" and, therefore, that retrial would not place a defendant in double jeopardy. Willingham v. State, 50 Ala.App. 363, 279 So.2d 534, 537, cert. denied, 291 Ala. 803, 279 So.2d 538 (1973).
Federal courts have also held that where a jury becomes deadlocked and the judge does not abuse his discretion in declaring a mistrial, a retrial will usually not result in a valid claim of double jeopardy. United States v. Ellis, 646 F.2d 132, 135 (4th Cir. 1981); United States v. Castellanos, 478 F.2d 749 (2d Cir.1973). See also United States v. Brown, 677 F.2d 26, 27 (6th Cir. 1982), cert. denied, Brown v. United States, 459 U.S. 855, 103 S.Ct. 124, 74 L.Ed.2d 107 (1982); United States v. Gunter, 546 F.2d 861, 866 (10th Cir.1976), cert. denied, Gunter v. United States, 431 U.S. 920 (1977).
The petitioner cites Preston v. Blackledge, 332 F.Supp. 681 (E.D.N.C.1971), in support of his plea of former jeopardy. Preston supports the petitioner's argument; however, the great weight of authority supports the holding that a retrial after a mistrial where the judge has not abused his discretion will not give rise to a claim of double jeopardy and bar retrial. This court rejects Preston on the basis of Castellanos, 478 F.2d 749, 752, n. 2. The Castellanos court stated, "[T]he cases clearly recognize that the accused's right to a quick determination on the merits may in some instances be outweighed by the `ends of public justice' Perez, supra, 9 Wheat. (22 U.S.) at 580, 6 L.Ed. 165, or put another way, `the public's interest in fair trials designed to end in just judgments,' Wade v. Hunter, supra, 336 U.S. at 689, 69 S.Ct. at 837." 478 F.2d at 752.
Although we agree that there may be a "breaking point" in the retrial of a defendant, we do not find that the "breaking point" has been reached in this case. Gunter, 546 F.2d at 866.
In the present case, there is no record of any objections made by either side to the declaration of a mistrial in any of the three trials. Since there is no record of any objections and no indication that the declarations of the mistrials were improper, we must presume that the actions of the trial judges were proper. Clements, 390 So.2d at 1132.
Since the propriety of the trial judges' declaring any of the mistrials has not been challenged and there is no indication of any abuse in the declaration of the mistrials, we find that the "manifest necessity" standard required by Perez and its progeny has been met. Therefore, the petitioner's right against double jeopardy has not been violated in this case.

II.
The petitioner also contends that a retrial would violate his right of due process under the law. Although we find this to be a valid argument, the circumstances of this case do not allow us to find a breach of due process.
At the outset, it is important to note that there is no specific Alabama law concerning the issue now before this Court. The petitioner relies on four cases in support of his argument: United States v. Ingram, 412 F.Supp. 384 (D.D.C.1976); People v. Kirby, 112 Misc.2d 906, 447 N.Y.S.2d 606 (S.Ct.Cr. Term 1982), reversed on other grounds, 92 A.D.2d 848, 460 N.Y.S.2d 572 (1983); State v. Moriwake, 65 Hawaii 47, 647 P.2d 705 (1982); and State v. Witt, 572 S.W.2d 913 (Tenn.1978). Each of these cases, however, is substantially different from the case at bar.
In Ingram, the trial judge dismissed the case from the bench after two trials resulted in jury votes of ten-to-two and eleven-to-one for acquittal. That case can be distinguished from the present case for two reasons. First, in Ingram, the case was dismissed from the bench. The present case was not dismissed by the trial judge. Secondly, in Ingram, the court recognized that there were weaknesses in the government's case, stating:
Despite its contentions, the prosecution was not prejudiced by defense counsel's *450 reference to the obvious fact that the defendant is black and the identifying witness a white. There were aspects in addition to race that weakened her in-court identification.
Ingram, 412 F.Supp. at 385.
In the present case, there has been no challenge to the strength of the State's case or any indication of a weakness in the evidence.
In Witt, the trial judge also dismissed a case from the bench; the dismissal followed three mistrials. The court stated:
[T]rial judges have the inherent authority to terminate a prosecution in the exercise of a sound judicial discretion, where, as here, repeated trials, free of prejudicial error, have resulted in genuinely deadlocked juries and where it appears that at future trials substantially the same evidence will be presented and that the probability of hung juries is great.
Witt, 572 S.W.2d at 917.
Although we agree with this statement, the Witt case is also distinguishable from the present case. In Witt, the trial judge not only had the affidavits of two jurors stating that they thought no jury could ever agree on a verdict if substantially the same evidence was presented at a new trial, but he also heard the testimony of eight jurors who agreed with these affidavits. 572 S.W.2d at 915. There are no such affidavits or testimony in the present case.
Furthermore, Witt also stated that the trial judge is in the best position to evaluate the evidence and that the discretion of the trial judge in terminating a criminal prosecution "is a power that ought to be used with the greatest caution and only in the most urgent circumstances." 572 S.W.2d at 917. The judge who presided over Anderson's second and third trials believed that the evidence proved Anderson's guilt and, therefore, felt that he could not terminate any criminal prosecution.
In the first Kirby decision, the court upheld a decision by the trial judge to dismiss a criminal case after the juries stood ten-to-two for conviction, six-to-six, and ten-to-two for conviction. The charges involved in the case were murder in the second degree and attempted murder in the first degree. The main problem in obtaining a conviction was the credibility of the prosecution's principal witness. Kirby, 447 N.Y.S.2d at 608. In upholding the dismissal, the court stated that it had been informed by the trial judge that there would be little likelihood that any jury would reach a unanimous verdict. Kirby, 447 N.Y.S.2d at 607. Again, in the present case, there was neither a challenge to the prosecution's evidence, nor any indication by the trial judge in any way that future juries would not be able to reach a verdict.
Kirby was reversed a year later because the court found that the trial judge had improvidently exercised his discretion. 460 N.Y.S.2d at 573. In reaching this decision, the court considered the seriousness of the crimes that were involved. 460 N.Y.S.2d at 573.
The Moriwake court upheld the dismissal of a manslaughter charge after two juries had been unable to reach a verdict. Moriwake listed several factors to be considered in reaching such a decision:
The factors which the trial court should consider in undertaking this balance include the following: 1) the severity of the offense charged; 2) the number of prior mistrials and the circumstances of the jury deliberation therein, so far as is known; 3) the character of prior trials in terms of length, complexity and similarity of evidence presented; 4) the likelihood of any substantial difference in a subsequent trial, if allowed; 5) the trial court's own evaluation of the relative case strength; and 6) the professional conduct and diligence of respective counsel, particularly that of the prosecuting attorney.
Moriwake, 647 P.2d at 712.
These factors effectively reflect the competing interests that must be balanced in a case of this type. In considering these factors, the court relied on several statements made by the trial judge:

*451 "There have been two trials in this case entailing essentially the same evidence. And if there were a third trial, virtually the same evidence would very likely be presented. Both of these previous instances, there were hung juries. And the court feels that under the circumstances of this case, a third trial would pose undue emotional, personal and financial hardship on the defendant.
"Of course, if this were a situation entailing, say, murder for hire or a criminal situation, then it would be an element against dismissal. But, as the trial has indicated, this entailed certain shall we say, mitigating circumstances that were not indicative of criminal propensity as in the case, say, of murder or a criminal situation."
Moriwake, 647 P.2d 708-709. (Emphasis added.)
In weighing the factors set out in Moriwake, this Court finds that the petitioner's due process rights have not been breached. This is not to say, however, that this Court does not recognize the legitimacy of such a challenge under the proper circumstances. We agree with Kirby that such decisions must be made on a case-by-case basis:
This opinion is not to be construed as fixing the permissible or impermissible number of mistrials caused by deadlocked juries. The relevant principles must be applied on an ad hoc basis. The court is not announcing a per se rule or applying a formula mechanically. The sound judicial discretion of a trial judge to terminate a criminal prosecution is a power that ought to be used with the utmost caution and then only where the circumstances clearly justify such action.
Kirby, 447 N.Y.S.2d at 610.
This case involves one of society's most serious crimesmurder of a police officer. The severity of the offense charged must weigh heavily in this decision. As in the cases cited by the petitioner and previously cited by this court, the trial judge's evaluation of the evidence must also be given serious consideration. In the present case, the trial judge stated after both the second and third trials that the evidence convinced him of Anderson's guilt. Furthermore, there is no claim that the conduct of counsel on either side was anything but diligent. Therefore, the prosecution does not appear to be trying to obtain a retrial because of a lack of diligence in prior trials. In other words, the prosecution is not asking for another chance because of its own errors. There is also no explicit or implicit evidence that a future jury could not reach a unanimous verdict.
Although the total number of votes of all jurors in this case favored acquittal and no new evidence is expected at the next trial, we still feel that a mechanical formula based on jury votes and evidentiary expectations is not enough to dismiss an indictment in a capital murder case.
The petitioner cites several errors in the trial of this case. During the second trial, the jury was given a copy of the indictment which showed Anderson's last known address as Cook County Jail. The foreperson asked whether the jury could consider this information and was told that they could not. The petitioner also cites oral instructions given at the third trial as being prejudicial. Most notably, in one instance, the judge stated, "And if the jury is convinced beyond a reasonable doubt that at the time the defendant shot the officer and that all of these elements existed ..." (Emphasis added.)
Whether the indictment or the instructions affected the jury and prevented them from reaching a unanimous verdict is purely speculative. The fact is that the defendant was not convicted after the second or third trials.
We agree that under certain circumstances "[r]equiring defendants to face additional juries with the continuing prospect of no verdict offends traditional notions of fair play and substantial justice." Witt, 572 S.W.2d at 917. Upon looking at the facts and circumstances of this case and balancing all of the competing interests, we *452 find that no breach of due process will occur by retrying the petitioner.
For all of the above reasons, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
JONES, J., dissents.
JONES, Justice (dissenting).
I respectfully dissent. Generally speaking, I do not disagree with the precedents relied upon by the majority; and I agree that their application to the facts of this case, in the final analysis, is a policy call. The test is one of essential, basic fairness. How many times must a defendant in a criminal case be put to trial, with each one ending in a hung jury, before the "unfairness" flag is raised? If three times is not enough, would three more times likewise not be enough? Except for the seriousness of the matter at hand, one might theorize in jest that, because the State gained one more juror for conviction with each successive trial, the State should be afforded eight additional trials in order to obtain a guilty verdict (at the third trial the jurors stood eight for acquittal, four for conviction). Or maybe "fairness" would dictate that so long as the State gains at least one more juror for conviction with each trial, the defendant's constitutional challenge to a retrial is due to be rejected.
While the cited precedents are helpful, these cases, as does the majority opinion in this case, lay undue stress upon the defendant's burden to object to the trial court's declaration of a mistrial, as well as the burden to produce evidence from the trial jurors to the effect that in their opinion no future jury could agree upon a verdict. It seems to me that these are misplaced elements in the fairness test. The legal conclusion of fairness vel non must be found in the inherent fact that the defendant is being put to a fourth trial where three separate juries in three separate prior trials have failed to reach a verdict.
The only precedent with respect to successive trials, to my knowledge, is found in the statutory proscription in civil cases against more than two new trials on the weight of the evidence ground. Code 1975, § 6-8-104. While, admittedly, the parallel between successive hung juries in the instant case and post-judgment new trial motions (see Casey v. Jones, 410 So.2d 5 (Ala. 1981) (n. 2)) is less than complete, this legislative expression of public policy, barring more than three trials in any civil cause, finds its basis in the same essential fairness test applicable to the instant case. Indeed, I believe the considerations here are even more favorable to the defendant, and this for the reason that the test applicable to a criminal prosecution finds its genesis not merely in a legislative expression but in the organic lawthe State Constitution.
After all, once we have applied all the objective elements, "fairness," ultimately, is a matter of subjective judgment; and in this case it is my personal subjective judgment that to put this defendant to a fourth trial is violative of constitutional due process.