783 So.2d 58 (1998)
Roderick TRIBBLE
v.
STATE.
CR-97-1006
Court of Criminal Appeals of Alabama.
October 2, 1998.
Rehearing Denied December 18, 1998.
*59 Denise Hill, Decatur, for appellant.
Bill Pryor, atty. gen., and Beth Slate Poe, asst. atty. gen., for appellee.
BROWN, Judge.
The appellant, Roderick Tribble, appeals from his convictions for vehicular homicide, a violation of § 32-5A-192, Code of Alabama 1975, and for failure to give information and to render aid, more commonly known as leaving the scene of an accident, a violation of § 32-10-2, Code of Alabama 1975. The appellant was sentenced to 5 years' imprisonment for the vehicular homicide conviction, and 10 years' imprisonment for the leaving the scene of an accident conviction. The sentences are to run consecutively.
The state's evidence established that late in the afternoon of December 4, 1993, the appellant turned his vehicle into the oncoming lane of traffic. When Kerri Duke swerved her vehicle in order to avoid being hit by the appellant, she had a head-on collision with another car. She died of massive head injuries suffered in the accident. The appellant did not stop his vehicle. A witness to the accident followed the appellant's truck a short distance. The appellant slowed his vehicle, which enabled the witness to get the tag number from the appellant's truck. The witness then returned to the scene of the accident and gave the tag number to the police. The appellant drove away.
The truck driven by the appellant was owned by his employer, Hopper's Construction Company. The appellant admitted that he was driving the truck the night the accident occurred, but he denied being at the accident scene.
The convictions for vehicular homicide and leaving the scene of an accident resulted from the appellant's second trial for the charged offensesthe first trial resulted in a mistrial. The appellant contends that in the first trial, the trial court erred in declaring a mistrial on the offense of leaving the scene of an accident and that, therefore, double jeopardy principles barred his retrial for that offense.[1] The appellant preserved this assertion by filing a motion to dismiss the count of the indictment charging him with leaving the scene of an accident. (C.R.54-57.) The motion to dismiss was denied by the trial court before the second trial.
The record reflects that in the first trial, the trial court charged the jury as follows on the offense of failure to render aid:
"A person commits the crime of failure to give information required and render aid if, after being involved in an accident resulting in injury to or the death of any person or damage to any vehicle which is driven, he does not first give his name, address and the registration number of his vehicle or the vehicle he is driving; second, exhibit his driver's license upon request to the person struck or the driver or occupant of any motor vehicle collided with or damaged; and third, does not render to any person injured in such accident reasonable assistance, including the transportation of or the making of arrangements for transportation of such person to a physician or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such transportation is requested by the injured person.

*60 "To convict, the State must prove beyond a reasonable doubt each of the following elements of failure to give information required and render aid: (1) that the defendant, Roderick Tribble, was involved in an accident resulting in an injury to or the death of any person or damage to any vehicle which is driven by any person; (2) that the defendant, Roderick Tribble, did not give his name, address or registration number of a vehicle that he was driving at the time of the accident; (3) that the defendant, Roderick Tribble, did not render to any person injured in the accident reasonable assistance, including transportation of or the making of arrangements for transportation of such person to a physician or hospital for medical or surgical treatment if it was apparent to a reasonable person that such treatment was necessary. If you find from the evidence that the State has proved beyond a reasonable doubt each of those elements of the offense of failure to give required information and render aid as charged, then you shall find the defendant guilty of failure to give required information and to render aid. If you find that the State has failed to prove beyond a reasonable doubt any one or more of the elements of the offense of failure to give required information and render aid, then you cannot find the defendant guilty of failure to give required information and render aid."
(R. 66-69.)
The trial court also charged the jury that it could "find the defendant not guilty on both counts, guilty on both counts, or guilty of one and not guilty of the other." (C.R.74.)
At the conclusion of the court's charge, the state objected to the trial court's charge on failure to render aid. The following exchange then occurred:
"[Prosecutor]: ... [I]n reference to failure to render aid or give information; it's my understanding, and I may have misunderstood in the charging conference, but I thought that was an and/or type of qualification with three different circumstances that you don't do. Any one of those is sufficient, and I believe you said `and' after the individual sections."
"THE COURT: Well, in this case, is that critical? If it was, in fact, the defendant driving that vehicle, he didn't do any of them.
". . . .
"THE COURT: I mean, it's semantics. I don't think there is any possible way they could find him to be the driver and having complied with one of these and not the other"
"MR. LAMB [prosecutor]: Judge, out of an abundance of caution, we would ask that you reinstruct and use `or' instead of `and.'
". . . .
"THE COURT: I'm going to overrule on your request, Mr. Lamb. I don't think it's critical in this case. I think once they make the determination if it was or was not the defendant driving the vehicle in question, it is going to [be] immaterial. As I'm reading this, I don't think what I gave them would create any confusion and I don't see any good that would be gained from that...."
(C.R.78-81.)
After approximately eight hours of jury deliberation, the following occurred:
"THE COURT: ... We have a note that indicates they are basically deadlocked. It's an unusual note, in that they actually have given where they stand; 5 and 7 in the vehicular homicide, and in the failure to render aid they indicate right now they are 12 and 0 not *61 guilty. I really am not inclined to bifurcate these cases. I think they are so closely intertwined that if I mistry one, I'm going to mistry both of them. They have not actually rendered a verdict and I'm about to bring the jury back in. I'll hear from both sides before I do that.
"MR. LAMB [prosecutor]: Judge, it appears appropriate that you need to declare a mistrial in this case. I would point out that we excepted to the charge of failure to render aid at the time it was given. Of course, under the facts of this case, I think Your Honor thought it would be impossible to find guilty of one without finding guilty of the other based on the facts.
"THE COURT: I still think that. I'm baffled by this note, to be frank with you.
"MR. LAMB: Judge, I just point that out because I think perhaps they misunderstood the failure to render aid. At this point I think it would be useless to try to correct their misunderstanding of what the law in that regard would be; and we would certainly ask for a mistrial in this case.
"THE COURT: Mr. Totten, I'll give you the floor. What are your thoughts on it?
"MR. TOTTEN [defense counsel]: Judge, on behalf of Mr. Tribble, I would point out to the Court that the verdicts I don't think that they arethe note, I don't think, indicates an inconsistent way of thinking on behalf of the jury. I think in this case an acceptable result could have been reached and was indicated so by the Court when it instructed the jury that it could have two guilty verdicts, two not guilty verdicts or a guilty verdict and a not guilty verdict. My thoughts are, Your Honor, and I urge the Court and objectI must object formally, Your Honor, to the declaring of a mistrial by Your Honor on the count charging failure to render aid or giving of information, because in my judgment, the declaration by the jury indicates that it has reached a unanimous verdict on that count. I would urge the Court to allow the jury to render a formal verdict on the form of that count and I have no objection to the mistrial on the count charging vehicular homicide.
"THE COURT: I'll note your objection, but I'm going to overrule it. That is a general statement; every time I have two-count indictments, I say that basically, or words to that effect. I can see where you could have that result in a 12-0 not guilty vote in the vehicle homicide, but it's inconceivable to me and inconsistent that you could have five people vote guilty in the vehicular homicide and none of them vote guilty in failure to give required information or render aid. I understand the defendant denies or has indirectly denied in statements being there or being the party. The issue is not whether or not he gave his driver's license or offered to take anybody to the hospital. The issue is whether or not it was him and whether or not he was there at the time. If he was there, if these numbers were reversed in terms of counts, not vote counts but in terms of the counts of the indictment, I would be inclined to go along with you, Mr. Totten, but I'm not. I'm going to declare a mistrial on both counts.
"MR. LAMB: Judge, in case this is taken up on appeal at a later time, we would like to point out that the reasoning Your Honor gave for not changing the jury charge on failure to render aid was that under the facts of this case, it should be immaterial. There was a minor *62 error on that; it was `and' instead of `or.'
"THE COURT: If I try this case again, which I probably will, I'm going to look at that a little more closely, Mr. Totten. Those may be alternative counts. The three basic elements of failure to render aid could have been any one of those three. Like I said at the time I gave that charge, it was immaterial because to me the key issue is was it your client, and if it was, he did none of those or any of those. I couldn't see that would beI didn't want to bring them back at that time and create more confusion than I solved. That's why I didn't bring them back, but I understand what you're saying, Mr. Lamb, and I'll look at that more closely. I'm still not sure the way I gave the charge is improper, but I stand to be corrected and I'll look at it more closely.
"MR. LAMB: Judge, we do agree with you under your assessment of the facts that it should have been immaterial under the facts, but in this case apparently it might not have been."
(C.R.87-93.) The trial court then declared a mistrial on both counts.
As noted above, the appellant contends that the trial court erred in declaring a mistrial on the count charging failure to render aid; therefore, he claims, double jeopardy principles barred his retrial for that offense. In support of this assertion, he argues that "the jury had indicated unmistakably that they had acquitted the Appellant on one count, that of failure to aid. The trial court decided that they were `deadlocked and confused' .... [y]et the court determined this without asking a single question of any juror." (Appellant's brief, p. 9.)
Section 12-16-233, Code of Alabama 1975, provides:
"The court or presiding judge in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge, there is a manifest necessity for the discharge or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury."
The granting of a mistrial lies within a trial court's discretion and will not be reversed on appeal, absent an abuse of that discretion. Grimsley v. State, 678 So.2d 1197, 1206 (Ala.Cr.App.1996).
"`The "prototypical example" of a case meeting the "manifest necessity" standard ... is the hung jury.' Ex Parte Anderson, 457 So.2d 446, 448 (Ala. 1984). `[T]he mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict ... [is] the classic basis for a proper mistrial.' Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). A mistrial, declared after a trial judge has determined that the jury cannot agree upon a verdict, does not terminate the original jeopardy to which the defendant was subjected. Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Thus, a defendant's retrial following a hung jury does not constitute double jeopardy under the Alabama or United States Constitutions."
McKinney v. State, 567 So.2d 870, 874, (Ala.Cr.App.), cert. denied, 567 So.2d 877 (Ala.1990). See, also, Rule 22.3(a)(2), Ala. R.Crim.P. ("[t]he court shall discharge the *63 jurors when upon expiration of such reasonable time as the court deems proper, it appears that there is no reasonable expectation that the jurors will be able to agree upon a verdict").
We cannot say that the trial court abused its discretion in declaring a mistrial on both counts. After approximately eight hours of deliberation, the jury indicated that it was deadlocked on the count charging vehicular homicide. The jury further indicated that it had unanimously agreed to acquit the appellant of the failure-to-render-aid count. In spite of the appellant's urging, we do not consider the jury's tentative vote included within its note to the trial court to be an official verdict acquitting the appellant of the count charging failure to render aid. See Rule 23.1(a), Ala.R.Crim.P., ("[t]he verdict of the jury shall be unanimous, shall be in writing, signed by the foreman, and shall be returned in open court"). The trial court determined that the jury was confused and that further instructions or deliberations would not aid the jury in reaching a verdict; therefore, it declared a mistrial. The appellant alleges that the trial court reached this conclusion arbitrarily, without questioning the jurors; however, the appellant did not request further instructions or ask that the jurors be questioned regarding their apparent confusion. "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or [that] were a natural consequence of his own actions." Fountain v. State, 586 So.2d 277, 282 (Ala.Cr.App.1991).
The trial court's conclusion that the jury was confused was certainly reasonable. Under the facts of this case, the jury could not logically acquit the appellant of the charge of failing to render aid, but find him guilty of vehicular homicide. If the appellant was the driver of the vehicle that caused the accident, then the undisputed evidence established that he left the scene of the accident without providing any information or rendering any aid, as required by § 32-10-2, Code of Alabama 1975. The appellant argued in his motion to dismiss that the jury could have found that he was guilty of vehicular homicide, but that he was not guilty of failing to render aid because he might not have been aware that he caused the accident. We believe that this is a tortured interpretation of the facts, especially in light of the fact that the appellant maintained that he was not even at the scene.
Given the fact that the jury had already revealed its position in its note to the trial court, there was a very real danger that any encouragement to continue deliberations or any questions posed to the jurors might have improperly suggested to the jurors that they had reached the wrong conclusion. A trial court may urge a jury to reach a verdict, but it may not suggest a verdict. Freeman v. State, 659 So.2d 158, 160 (Ala.Cr.App.1994).
In conclusion, the jury indicated after extensive deliberations that it was deadlocked as to one of the counts. The trial court concluded that further deliberations would be futile. The trial court further determined that the counts were so intertwined that the ends of justice would not permit a mistrial as to one count but not the other, so it declared a mistrial on both counts.
"In Ex Parte Anderson, 457 So.2d 435 (Ala.Crim.App.), aff'd, 457 So.2d 446 (Ala.1984), this court, quoting Arizona v. Washington, 434 U.S. at 509-10, 98 S.Ct. at 832, stated:
"`[T]here are especially compelling reasons for allowing the trial judge to exercise broad discretion in deciding whether or not "manifest necessity" justifies a discharge of the jury. On the one hand, if he discharges the jury *64 when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the "necessity" for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments. The trial judge's decision to declare a mistrial when he considers the jury deadlocked is therefore accorded great deference by a reviewing court.'"
McKinney, 567 So.2d at 875-76.
The appellant has failed to establish that the trial court abused its discretion in declaring a mistrial on both counts. Accordingly, a second trial for both counts did not violate the protections against double jeopardy. McKinney, 567 So.2d at 876. The trial court properly denied the appellant's motion to dismiss.
For the reasons set forth above, the judgment of the trial court is affirmed.
AFFIRMED.
LONG, P.J., and McMILLAN, J., concur. COBB and BASCHAB, JJ., concur in part and dissent in part.
COBB, Judge, concurring in part and dissenting in part.
The majority affirms the appellant's convictions in a retrial of a two-count indictment. Counts I and II charge the appellant with vehicular homicide and failure to render aid, respectively. I concur in the majority's affirmance as to Count I,[2] but the majority fails to recognize the merit of the appellant's double jeopardy argument regarding Count II.[3] It is from that portion of the opinion that I respectfully dissent.
*65 This appeal arises out of a retrial. At trial counsel properly raised the issue of double jeopardy regarding Count II by filing a motion to dismiss (R. 56), thus preserving the issue that prompts my dissent. Also submitted with his motion to dismiss was the applicable portion of the transcript of the first trial R. 400-38 (1st trial), R. 58-96 (2d trial).
After over eight hours of deliberation by the jury in the first trial, the following occurred:
"THE COURT: ... We have a note that indicates they are basically deadlocked. It's an unusual note, in that they actually have given where they stand; 5 and 7 in the vehicular homicide, and in the failure to render aid they indicate right now they are 12 and not guilty. I really am not inclined to bifurcate these cases. I think they are so closely intertwined that if I mistry one, I'm going to mistry both of them. They have not actually rendered a verdict and I'm about to bring the jury back in. I'll hear from both sides before I do that.
"MR. LAMB [prosecution]: Judge, it appears appropriate that you need to declare a mistrial in this case. I would point out that we excepted to the charge of failure to render aid at the time it was given. Of course, under the facts of this case, I think Your Honor thought it would be impossible to find guilty of one without finding guilty of the other based on the facts.
"THE COURT: I still think that. I'm baffled by this note, to be frank with you.
"MR. LAMB: Judge, I just point that out because I think perhaps they misunderstood the failure to render aid. At this point I think it would be useless to try to correct their misunderstanding of what the law in that regard would be; and we would certainly ask for a mistrial in this case.
"THE COURT: Mr. Totten, I'll give you the floor. What are your thoughts on it?
"MR. TOTTEN [defense counsel]: Judge, on behalf of Mr. Tribble, I would point out to the Court that the verdicts I don't think that they arethe note, I don't think, indicates an inconsistent way of thinking on behalf of the jury. I think in this case an acceptable result could have been reached and was indicated so by the Court when it instructed the jury that it could have two guilty verdicts, two not guilty verdicts or a guilty verdict and a not guilty verdict. My thoughts are, Your Honor, and I urge the Court and objectI must object formally, Your Honor, to the declaring of a mistrial by Your Honor on the count charging failure to render aid or giving of information, because in my judgment, the declaration by the jury indicates that it has reached a unanimous verdict on that count. I would urge the Court to allow the jury to render a formal verdict on the form of that count and I have no objection to the mistrial on the count charging vehicular homicide.

"THE COURT: I'll note your objection, but I'm going to overrule it. That is a general statement; every time I have two-count indictments, I say that, basically, or words to the effect. I can see where you could have that result in a 12-0 not guilty vote in the vehicular homicide, but it's inconceivable to me *66 and inconsistent that you could have five people vote guilty in the vehicular homicide and none of them vote guilty in failure to give required information or render aid. I understand the defendant denies or has indirectly denied in statements being there or being the party. The issue is not whether or not he gave his driver's license or offered to take anybody to the hospital. The issue is whether or not it was him and whether or not he was there at the time. If he was there, if these numbers were reversed in terms of counts, not vote counts, but in terms of the counts of the indictment, I would be inclined to go along with you, Mr. Totten, but I'm not. I'm going to declare a mistrial on both counts.
"MR. LAMB: Judge, in case this is taken up on appeal at a later time, we would like to point out that the reasoning Your Honor gave for not changing the jury charge on failure to render aid was that under the facts of this case, it should be immaterial. There was a minor error on that; it was `and' instead of `or.'
"THE COURT: If I try this case again, which I probably will, I'm going to look at that a little more closely, Mr. Totten. These may be alternative counts. The three basic elements of failure to render aid could have been any one of those three. Like I said at the time I gave that charge, it was immaterial because to me the key issue is was it your client, and if it was, he did none of those or any of those. I couldn't see that would beI didn't want to bring them back at that time and create more confusion than I solved. That's why I didn't bring them back, but I understand what you're saying, Mr. Lamb, and I'll look at that more closely. I'm still not sure the way I gave the charge is improper, but I stand to be corrected and I'll look at it more closely.
"MR. LAMB: Judge, we do agree with you under your assessment of the fact that it should have been immaterial under the facts, but in this case apparently it might not have been."
(C.R.87-93.) (Emphasis added.) The trial court then declared a mistrial on both counts.
In affirming the appellant's conviction, the majority characterized the jury's note to the court as a "tentative vote" and reasoned that their written communication to the court did not comply with Rule 23.1(a), Ala.R.Crim.P. Rule 23.1(a) requires that "[t]he verdict of the jury shall be unanimous, shall be in writing, signed by the foreman, and shall be returned in open court." It would appear the jury was unaware that it could render a partial verdict and that it communicated with the court in the only manner it knew. Trial counsel urged the court to formally accept the jury's verdict on Count II; the judge denied the motion. His decision to mistry the case upon receipt of the note from the jury prevented the jury from having the opportunity to fulfill the requirements of Rule 23.1(a). Consequently, this decision deprived the appellant of an acquittal on Count II. His subsequent conviction upon the retrial of the matter thus violated one of our most basic constitutional rights: the right to be free from multiple prosecutions for the same offense.[4] Hence, the hypertechnical application of Rule 23 by the majority seems unreasonable when confronted with the powerful prohibition of the Double Jeopardy Clause of the Fifth *67 Amendment of the United States Constitution.
The Double Jeopardy Clause bars a second trial only if jeopardy attached in the original proceeding. Jeopardy attaches once the jury has been empaneled and sworn. Indeed, the trial judge is given great discretion in declaring a mistrial.[5]
If a jury is unable to reach a verdict, then the trial court must follow the mandate of § 12-16-233, Code of Alabama 1975, which provides that:
"§ 12-16-233. Discharge of jury and entry of mistrial.
"The court or presiding judge in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge there is a manifest necessity for the discharge or when the ends of justice would otherwise be defeated. In all cases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury."
As stated in the majority's opinion,
"`"The `prototypical example' of a case meeting the `manifest necessity' standard... is the hung jury." Ex parte Anderson, 457 So.2d 446, 448 (Ala.1984). "[T]he mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict ... [is] the classic basis for a proper mistrial." Arizona v. Washington, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). A mistrial, declared after a trial judge has determined that the jury cannot agree upon a verdict does not terminate the original jeopardy to which the defendant was subjected. Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984). Thus, a defendant's retrial following a hung jury does not constitute double jeopardy under the Alabama or United States Constitutions.'"
783 So.2d at 62.
The majority concludes that the trial judge did not abuse his discretion in declaring a mistrial on both counts. However, the majority has not cited, and cannot cite, an Alabama case on point. I have been unable to find a case in Alabama in which a jury has informed the court that it has voted unanimously to acquit and the court refused to accept the jury's verdict.
My research did reveal a case which illustrates how partial verdicts are typically handled. In Bates v. State, 659 So.2d 201, 204 (Ala.Cr.App.1994), cert. denied, 659 So.2d 201 (Ala.Crim.App.1994), a Mobile Circuit Court judge was informed by a jury that it had reached a verdict on some counts but was "hung" on other counts. The judge gave the following instruction:
"All right, I will accept your two not guilty verdicts. And, as I say, I understand this is a difficult matter for you to deal with, and I'm not sure that given the time of trial involved that we ought to wash all that out right now...."
He went on to instruct the jury to continue its deliberations the next morning. Even if the jury had never been able to return a verdict on the remaining counts, the two counts upon which the jury had decided to *68 acquit were allowed to be entered. That is what should have happened in this case.[6]
Having extended my research to other states, I have found several cases that might appear to support the majority's position, except for one glaring distinction. The jurors in these cases found the defendants guilty on some counts and they were deadlocked on others. See Commonwealth v. Floyd, 415 Mass. 826, 615 N.E.2d 938 (1993) (court reversed for accepting partial verdict of guilt where the verdict was characterized as conditional or tentative); State v. Knight, 143 Wis.2d 408, 421 N.W.2d 847 (1988) (court's acceptance of guilty verdicts on some counts prevented the jury from reconsidering these counts in its continued deliberation).
In State of Missouri v. Peters, 855 S.W.2d 345 (1993), the appellate court upheld the trial court's order refusing to accept not guilty verdicts when the jury attempted to return inconsistent guilty verdicts. This was the trial court's perception in the present case. The trial judge stated, "[B]ut it's inconceivable to me and inconsistent that you could have five people vote guilty in the vehicular homicide and none of them vote guilty in failure to give required information or render aid." (R. 91.)
Thus, it appears that the trial court had difficulty imagining how the jury could conclude that the appellant was not guilty of failure to render aid but that he may have been guilty of vehicular homicide. However, there are several possible theories. First, the jury may not have been convinced that the appellant was aware that he caused the accident. Or the jury could have struggled over the definition of the term "involved" in light of the fact that Tribble may have caused the collision by his improper left turn, but his vehicle was not actually involved in the collision. By what rationale the jury arrived at its 12-0 decision, finding the appellant not guilty of vehicular homicide is conjecture; however, its decision to acquit is not. In this case, the trial judge substituted his own judgment for that of the jury; it seems he was unable to envision how the jury could treat the two offenses differently and, therefore, he allowed his own interpretation of the facts to govern the decision to grant a mistrial on a count as to which the jury had indicated they were ready to acquit by a 12-0 vote. Whether the jury's decision to acquit on the "failure to render aid" offense was reached through a mistake, compromise, or lenity, "the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause." United States v. Powell, 469 U.S. 57, 63, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), citing Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The United States Supreme Court's decisions stressing the unreviewable power of a jury to return a verdict of not guilty for impermissible reasons have been applied by the Alabama appellate courts. See, e.g., Bradham v. State, 27 Ala.App. 225, 170 So. 222, cert. denied, 233 Ala. 106, 170 So. 223 (1936) (the court recognized that, although the same evidence amply supported a guilty verdict on both counts of the indictment, it was within the province of the jury to find the defendant guilty of only one count); Hill v. *69 State, 651 So.2d 1128, 1133-34 (Ala.Cr. App.1994).
Because this is a case of first impression in Alabama, I looked to the Federal courts for cases that could be used for guidance. In United States v. Chinchic, 655 F.2d 547 (4th Cir.1981), the Fourth Circuit held that a jury's tentative agreement to acquit one defendant does not operate as an acquittal for double jeopardy purposes if no verdict is returned.
"The double jeopardy contention arose out of an incident with the jury at the first trial. After the jury had deliberated several hours it reported from the jury room that it had reached a verdict on one defendant; it did not, however, identify the defendant nor did it indicate whether the verdict was of guilt or acquittal. The trial judge did not call the jury into the courtroom in order to record the verdict but ordered it to continue deliberating, and the jury subsequently reported that it was deadlocked on all three defendants. The parties stipulated that the jury had at first agreed to acquit Melia but that one juror had changed his or her mind resulting in an ultimate deadlock of 11-1 for his acquittal."
655 F.2d at 549-50. Chinchic is easily distinguishable from this case. Chinchic involved a retrial for the interstate transportation of stolen goods. The jury in Chinchic did not communicate with the court in writing, nor did it indicate it was hung on the other counts as the jury here did. At the initial trial of the three defendants, the jury initially agreed to acquit one defendant, and informed the court of that agreement. The trial court correctly told it to continue to deliberate. The jury ultimately deadlocked with regard to all defendants. Considering the informal nature of the jury's communication, the United States Court of Appeals for the Fourth Circuit held that the initial verdict was not final and that it could not act as a bar on double jeopardy grounds because the verdict was neither announced nor accepted by the trial court. The facts upon which Chinchic was decided were clearly different from those in this case.
I remain convinced that the trial court in the first trial erred when it declared a mistrial as to Count II of the indictment. A jury announced that it was deadlocked on Count I, but that it had reached a unanimous verdict to acquit on Count II. It was error not to accept the jury's verdict. The mistake was then compounded when the trial court failed to grant the appellant's motion to dismiss regarding Count II before the second trial. Jeopardy had attached and thus a retrial is barred on that count. Consequently, I would affirm the trial court's judgment as to Count I and reverse its judgment and render a judgment for Tribble as to Count II.
NOTES
[1] He does not allege that the trial court's declaring a mistrial on the offense of vehicular homicide was improper.
[2] Tribble is charged with violating § 32-5A-192, which reads as follows:

"32-5A-192. Homicide by vehicle or vessel.
"(a) Whoever shall unlawfully and unintentionally cause the death of another person while engaged in the violation of any state law or municipal ordinance applying to the operation or use of a vehicle, or vessel, as defined in Section 33-5-3, or to the regulation of traffic or boating shall be guilty of homicide when the violation is the proximate cause of the death.
"(b) Any person convicted of homicide by vehicle or vessel shall be fined not less than five hundred dollars ($500) nor more than two thousand dollars ($2,000), or shall be imprisoned for a term not less than one year nor more than five years, or may be so fined and so imprisoned. All fines collected for violation of this section relating to vessels shall be paid into the State Water Safety Fund."
[3] Count II involves the violation of § 32-10-2, more commonly known as leaving the scene of an accident.

"32-10-2. Duty to give information and render aid.
"The driver of any motor vehicle involved in an accident resulting in injury to or the death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, shall upon request exhibit his driver's license to the person struck or the driver or occupant of or person attending any motor or other vehicle collided with or damaged and shall render to any person injured in such accident reasonable assistance, including the transportation of, or the making of arrangements for the transportation of such person to a physician or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such transportation is requested by the injured person."
[4] See Ohio v. Johnson, 467 U.S. 493, 498-99, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) in which the United States Supreme Court has given various policy justifications for the protections afforded citizens by the Double Jeopardy Clause.
[5] See also Lindsey v. State, 456 So.2d 383 (Ala.Cr.App.1983), aff'd, 456 So.2d 393 (Ala. 1984), cert. denied, 470 U.S. 1023, 105 S.Ct. 1384, 84 L.Ed.2d 403 (1985); Parham v. State, 47 Ala.App. 76, 250 So.2d 613 (1971). Hallman v. State, 36 Ala.App. 592, 61 So.2d 857 (1952);
[6] In a case out of Florida, United States v. Rivera, 77 F.3d 1348 (11th Cir. 1996), the jury, like the jury in this case, informed the court that it was unable to reach a decision on one of the "charges" but that it had reached a verdict of not guilty on the other. The district court accepted the partial verdict and then declared a mistrial on the remaining "charge."