**UNITED STATES of America**

v.

**Edward C. INGRAM.**

**Crim. No. 75–443.**

United States District Court, District of Columbia.

Jan. 7, 1976.

Edward C. McGuire, Asst. U. S. Atty., Washington, D. C., for U. S.

Michael A. Kramer, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

■ Defendant, while on parole from a sentence for armed robbery under the Federal Youth Corrections Act, 18 U.S.C. § 5010(c), was arrested on May 16, 1975, for the bank robbery charged in the instant indictment. He has remained in jail since that date because of a parole violation warrant based on the new offense and other deficiencies and for failing to make bond in the instant case. Twice now he has gone to trial. Defendant did not testify at either trial and presented no proof contradicting

the Government witnesses except by way of effective cross-examination. The proof was legally sufficient to support a conviction in each instance but the juries simply did not credit the witnesses, voting 10–2 and 11–1 for acquittal. After the second mistrial, the Court dismissed the indictment *sua sponte* from the bench without any objection then being voiced by the United States. Almost a month later the prosecution has moved for reconsideration, questioning the Court's power under the circumstances.

Thus, once again the ever recurring problem is presented whether any discretion exists in a United States District Judge to terminate a useless prosecution. This is, of course, not a case of double jeopardy. *See Illinois v. Somerville*, 410 U.S. 458, 463, 470, 93 S.Ct. 1066, 1070, 1073, 35 L.Ed.2d 425, 430, 434 (1973). It is simply a matter of fair play. The Government has no new proof; it simply wants another chance. Despite its contentions, the prosecution was not prejudiced by defense counsel's reference to the obvious fact that defendant is black and the identifying witness a white. There were aspects in addition to race that weakened her in-court identification. Apparently the Government, always a hard loser, simply wishes to keep pressing so long as juries disagree in the hope that a conviction eventually will result. Appellate courts have approved this process of attrition under different circumstances. *See United States v. Castellanos*, 478 F.2d 749 (2d Cir. 1973); *United States v. Weinstein*, 452 F.2d 704 (2d Cir. 1971), *cert. denied sub nom. Grunberger v. United States*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); *United States v. Dooling*, 406 F.2d 192 (2d Cir.), *cert. denied sub nom. Persico v. United States*, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969).

Here is a man in jail now more than seven months primarily because of an offense which the Government is unable to convince a jury he committed. If another trial takes place there is every reason to believe the jury will again be divided or will acquit. There is great deference shown jury determinations that result in convic-

tion, and the same attitude should prevail when, as here, members of a jury disagree so conclusively when not even faced with conflicts in the proof. Under the circumstances of this case the verdicts themselves indicate a reasonable doubt in the minds of a substantial majority of the jury members who have heard the evidence. To permit a retrial, after 21 of 24 jurors have already refused to convict, is to ignore the reasonable doubt standard. The Court in dismissing simply recognized the juries' appraisals of the weight of the evidence. The judgment of the Court or the prosecutor as to the weight of the evidence is, under these circumstances, not entitled to outbalance the obvious.

■ There are also other considerations bearing on the exercise of the Court's power in this situation. Prosecutorial discretion in choosing to indict and to proceed twice has been vindicated. The Court's intervention is required in the interests of justice. *See United States v. De Diego*, 167 U.S. App.D.C. 252, 511 F.2d 818, 824 n. 8 (1975); *id.* at 833 n. 6 (McGowan, J., dissenting). Retrials are almost always unsatisfactory. Counsel tend to try them more perfunctorily, testimony lacks freshness, subtle differences in recollections are blown up to challenge credibility and a certain atmosphere of staleness is created. All this impedes the search for truth. We also tend to forget the earnest members of the public who as innocent bystanders have their lives repeatedly disrupted because they were at or near the scene of the offense. Grand jury appearances, line-up appearances, witness interviews by police and prosecutors, suppression motions, trial appearances, all are present here. When does a citizen's obligation cease? The lead Government witness in this case had to make considerable sacrifice to appear at the last trial. Is the Government's inability to convince so paramount that all other considerations become subordinate—the strain on defendant, the burden on inadequately compensated defense counsel, the inconvenience to the bank and its personnel, and the urgency of the more significant court business subject to priority demands? The Court submits that under the situation presented here these factors are proper additional elements to be taken into account.

The motion for reconsideration is denied.

SO ORDERED.