PEOPLE v SIERB

Docket No. 107551. Argued October 8, 1997 (Calendar No. 9). Decided
    March 17, 1998.

James S. Sierb was charged in the Detroit Recorder's Court with one
    count of burning real property and one count of burning insured
    property. The defendant was tried twice, and mistrials were
    declared after the juries were unable to reach verdicts. The court,
    Dalton A. Roberson, J., granted the defendant's motion to dismiss
    the charges with prejudice. The Court of Appeals, CAVANAGH, P.J.,
    and HOOD, J. (J. J. McDONALD, J., concurring in part and dissenting
    in part), affirmed, reasoning that the emotional and financial strain
    of a third trial would weigh so heavily on the defendant that it
    would violate his right to due process (Docket No. 179269). The
    people appeal.

    In an opinion by Justice BOYLE, joined by Chief Justice MALLETT,
and Justices BRICKLEY, WEAVER, and TAYLOR, the Supreme Court held:

    The due process guarantees of the Michigan and United States
Constitutions do not preclude retrial of this defendant under these
circumstances.

    1. Only procedural due process is guaranteed by the text of the
Fourteenth Amendment. The underlying purpose of substantive due
process is to secure the individual from the arbitrary exercise of
governmental power. Substantive due process has not been
expanded as an independent source of limitation on government,
however, other than in matters relating to marriage, family, procre-
ation, and the right to bodily integrity. Nor should it be expanded
to sanction new remedies that duplicate the protections of specific
constitutional provisions. As long as jeopardy has not attached, or
the statute of limitations has not run, a prosecutor may reinstate
the original charge on the basis of obtaining a new indictment and
thus beginning the process anew.

    2. In dismissing this case under the circumstances presented, the
trial court violated the doctrine of separation of powers. Whatever
the reach of substantive due process, the claim in this case does
not approach the threshold. There is no historical, textual, or
empirical foundation that requires inferring a new remedy under
substantive due process.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that this case should be analyzed in accordance with past precedent so as to find that a third retrial would be so prejudicial to the defendant as to violate his right to due process on these particular and unusual facts. The defendant was charged with arson. No direct evidence was presented linking him to the fire, and the only indirect evidence was burn patterns on the floor, which indicated the presence of flammable liquids. The defendant came forward with evidence that those liquids were routinely stored in that area. The case, thus, turned entirely on expert testimony. While the appointment of necessary defense experts is required by MCL 775.15; MSA 28.1252, given the majority's past hostility toward the appointment of expert witnesses for the defense, the defendant in this case cannot be faulted for finding no comfort in the slight possibility of obtaining appointed experts.

Instead of merely focusing on the task at hand, the majority seeks to effectively sound a death knell for the concept of substantive due process under Const 1963, art 1, § 17, and the Fourteenth Amendment of the United States Constitution, in the law of Michigan.

219 Mich App 127; 555 NW2d 728 (1996) reversed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Jeffrey Caminsky*, Assistant Prosecuting Attorney, for the people.

*Magill & Szymanski* (by *Duncan M. Szymanski*) for the defendant.

BOYLE, J. The trial court granted defendant's motion to dismiss with prejudice charges of burning real and insured property following the second declaration of a mistrial because of jury inability to agree on a verdict. We granted leave to appeal to determine whether the trial court correctly inferred this remedy from the substantive Due Process Clause of the constitution. We hold that the due process guarantees of the Michi-

gan and United States Constitutions, Const 1963, art 1, § 17, and US Const, Am XIV, do not create a right to preclude retrial of this defendant in these circumstances. We reverse the decision of the Court of Appeals and remand the case to the trial court for further proceedings.

I

The defendant was charged and bound over on one count of burning real property, MCL 750.73; MSA 28.268, and one count of burning insured property, MCL 750.75; MSA 28.270, following a fire that damaged his business in Garden City in June, 1990. Trial began in June, 1993, and a mistrial was declared after the jury was unable to reach a verdict. In February, 1994, a second trial was commenced against the defendant in which substantially the same evidence was offered. Again, the jury was unable to reach a verdict, and a mistrial was declared.[1]

The defendant moved for dismissal of the charges. Acknowledging that the earlier mistrials had not been the result of procedural or substantive errors in the trial process, defendant contended that retrial after two hung juries would be so fundamentally unfair that it would violate the constitutional guarantee of

---

[1] In the first trial, the jury voted either ten to two in favor of conviction or eight to four in favor of conviction. In the second trial, the jury was evenly divided, with six jurors voting in favor of conviction and six jurors voting in favor of acquittal. While the defendant submits that the juror votes are material to our result, we decline the invitation to decide the issue on this basis. Neither this Court nor any other court has obligated jurors to disclose their votes other than in the context of confirming that they agree with a verdict reported as unanimous. It follows that we have not recognized a right on behalf of either the prosecution or the defense to such information.

due process. The trial court agreed and dismissed the charges with prejudice.[2]

The Court of Appeals affirmed in a two-to-one decision.[3] It reasoned that the emotional and financial strain of a third trial would weigh so heavily on defendant that it would violate the defendant's right to due process.[4] We granted leave to appeal.[5]

II

On appeal, defendant argues only that the due process guarantees of the state and federal constitutions preclude a third trial on these charges.[6] The standard of review is de novo with regard to questions of law. *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994).

The Fourteenth Amendment to the United States Constitution and Const 1963, art 1, § 17 guarantee that no state shall deprive any person of "life, liberty or property, without due process of law."[7] Textually,

---

[2] The trial court concluded that retrial would be fundamentally unfair because 1) two prior trials had resulted in jury deadlock, 2) the prosecutor had no new evidence to offer against the defendant, 3) the likelihood of a third hung jury was high because there was no new evidence against the defendant, and 4) retrial would be an inefficient use of judicial resources.

[3] 219 Mich App 127; 555 NW2d 728 (1996).

[4] The dissenting judge agreed that due process guarantees may require dismissal of the charges against a defendant over the prosecutor's objection under certain circumstances, but argued that this defendant's right to due process would not be violated to such a degree that dismissal was justified. *Id.* at 136.

[5] 454 Mich 873 (1997).

[6] Defendant concedes that his rights under the Double Jeopardy Clause have not been violated by the repeated trials. See *Richardson v United States*, 468 US 317; 104 S Ct 3081; 82 L Ed 2d 242 (1984); *People v Thompson*, 424 Mich 118, 125; 379 NW2d 49 (1985).

[7] The express language of the Fourteenth Amendment of the United States Constitution provides:

only procedural due process is guaranteed by the
Fourteenth Amendment; however, under the aegis of
substantive due process, individual liberty interests
likewise have been protected against " 'certain gov-
ernment actions regardless of the fairness of the pro-
cedures used to implement them.' " *Collins v City of
Harker Heights*, 503 US 115, 125; 112 S Ct 1061; 117 L
Ed 2d 261 (1992), quoting *Daniels v Williams*, 474 US
327, 331; 106 S Ct 662; 88 L Ed 2d 662 (1986).[8] The
underlying purpose of substantive due process is to
secure the individual from the arbitrary exercise of
governmental power.[9] The defendant has failed to dis-
tinguish between the Michigan and federal due pro-
cess provisions and has not argued that the Michigan
provision should be interpreted differently from its
federal counterpart. We interpret the state provision
as coextensive with the federal provision for pur-
poses of this appeal. Absent definitive differences in
the text of the state and federal provision, common-
law history that dictates different treatment, or other
matters of particular state or local interest, courts
should reject the "unprincipled creation of state con-
stitutional rights that exceed their federal counter-

---

[N]or shall any State deprive any person of life, liberty, or prop-
erty, without due process of law . . . .

Const 1963, art 1, § 17 provides:

No person shall be . . . deprived of life, liberty or property,
without due process of law.

[8] For further recognition that the Due Process Clause of the Fourteenth
Amendment confers both substantive and procedural rights, see *United
States v Salerno*, 481 US 739, 746; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

[9] See *Foucha v Louisiana*, 504 US 71, 78; 112 S Ct 1780; 118 L Ed 2d
437 (1992); see also Fallon, *Some confusions about due process, judicial
review, and constitutional remedies*, 93 Col L R 309, 310 (1993).

parts." *Sitz v Dep't of State Police*, 443 Mich 744, 763; 506 NW2d 209 (1993).[10]

III

The defendant relies on five cases in support of the contention that retrial would violate the substantive guarantees of due process: *United States v Ingram*, 412 F Supp 384 (D DC, 1976), *State v Witt*, 572 SW2d 913 (Tenn, 1978), *State v Moriwake*, 65 Hawaii 47; 647 P2d 705 (1982), *State v Abbati*, 99 NJ 418; 493 A2d 513 (1985), and *People v Thompson*, 424 Mich 118; 379 NW2d 49 (1985). However, none of these cases except *Thompson* addresses the Due Process Clause in the context of a retrial after a properly declared mistrial,[11] and *Thompson* does so only in

---

[10] Factors to be considered when determining whether a state constitutional provision affords protection different from its federal counterpart include "1) the textual language of the state constitution, 2) significant textual differences between parallel provisions of the two constitutions, 3) state constitutional and common-law history, 4) state law preexisting adoption of the relevant constitutional provision, 5) structural differences between the state and federal constitutions, and 6) matters of peculiar state or local interest." *Sitz, supra* at 763, n 14.

[11] In *Ingram, supra*, the court held that dismissal of an indictment after the defendant's second mistrial was required in the "interests of justice" as "simply a matter of fair play." *Id.* at 385-386. The Due Process Clause was not addressed by the court.

In *Witt, supra*, the Tennessee Supreme Court barred retrial of a defendant whose indictments for first-degree murder were dismissed after three juries failed to reach unanimous verdicts. After finding that the constitutional right to due process was not involved, the court relied on the trial courts' "inherent authority" to terminate prosecutions in the exercise of "sound judicial discretion." *Id.* at 917.

Likewise, in *Moriwake, supra*, the Due Process Clause was not addressed when the court concluded that judges have inherent power to dismiss an indictment with prejudice over the objection of the prosecution where two mistrials were declared because the respective juries were unable to reach verdicts. *Id.* at 56.

Lastly, in *Abbati, supra*, the court did address the Due Process Clause, but rested its decision on the trial court's inherent right to dismiss an indictment with prejudice over the prosecutor's objection.

dicta.[12] The prosecutor may not abort a trial over a defendant's objection absent manifest necessity, *People v Dawson*, 431 Mich 234, 252; 427 NW2d 886 (1988), retry a defendant on higher charges after mistrial in an effort to penalize the defendant, *People v Ryan*, 451 Mich 30; 545 NW2d 612 (1996), nolle prosequi charges at trial without leave of court, MCL 767.29; MSA 28.969, or retry a defendant after having one full and fair opportunity at obtaining a conviction. *Dawson, supra* at 250.

Neither the cases cited nor our independent research supports the proposition that the protections of substantive due process require recognition of a remedy for the harm incident to one or more mistrials.[13] Some courts have declared the inherent author-

---

[12] In *Thompson*, the defendant's third trial resulted in a conviction for felony murder after the defendant's first conviction was reversed and a second trial ended in a mistrial. On appeal, the defendant argued that retrial after a mistrial violated the Double Jeopardy Clause of the Michigan Constitution, art 1, § 15 or the Due Process Clauses of the state and federal constitutions. We held that neither constitutional provision was violated, while observing that "there may be cases in which repeated retrials after repeated jury deadlock might be so fundamentally unfair as to violate the due process guaranteed by Const 1963, art 1, § 17, or the Fourteenth Amendment to the United States Constitution . . . ." *Id.* at 133.

[13] See *People v Cummings*, 47 Ill App 3d 578, 581; 362 NE2d 415 (1977) (the number of trials is not a violation of due process unless it also places the defendant in double jeopardy); *Ex Parte Anderson*, 457 So 2d 446 (Ala, 1984) (the defendant's due process rights were not breached by a fourth trial on capital murder charges when three earlier trials each resulted in mistrial); *State v Paige*, 256 NJ Super 362, 370; 607 A2d 164 (1992) (a third trial, where two juries had failed to reach a verdict and where no new evidence was offered against the defendant, did not violate the principles of fundamental fairness). We are not aware of any United States Supreme Court or federal Court of Appeals decision that has held that retrial after a properly declared mistrial where no new evidence is offered violates the federal Due Process Clause.

For an accounting of cases that have held that retrial after a properly declared mistrial did not violate substantive due process guarantees but would violate general principles of "fairness," see *Ingram, supra* at 385

ity to preclude retrials following mistrials attributable to jury deadlock. However, we reject the rationale that the administration of justice confers authority on this Court to allocate resources available to law enforcement, *Abbati, supra* at 429, or to assess the relative priority of discrete charges in a given community.

IV

The United States Supreme Court has declined to expand substantive due process as an independent source of limitation on government.

In *Hurtado v California*, 110 US 516, 527; 4 S Ct 111; 28 L Ed 232 (1884), it was held that the Fourteenth Amendment Due Process Clause did not make applicable to state governments the Fifth Amendment's requirement of indictment and presentment to a grand jury. The Court posited that Fourteenth Amendment due process encompassed only those safeguards not specifically found in the Bill of Rights. 1 LaFave & Israel, Criminal Procedure (2d ed), § 2.4(b), p 55. However, the Court eventually concluded that the Fourteenth Amendment incorporated and made applicable to the states numerous protections contained in the Bill of Rights.[14]

(making no reference to the Due Process Clause, the court concluded that the question was simply a matter of fair play); *Witt, supra* at 917 (after expressly stating that the Due Process Clause was not applicable to the case, the court held that requiring defendants to face juries with the continuing prospect of no verdict offends traditional notions of fair play and substantial justice); *United States v Rossoff*, 806 F Supp 200, 202 (CD Ill, 1992) (without explicitly relying on the Due Process Clause, the court held that an indictment may be dismissed with prejudice if a court determines that retrial is against the concept of fundamental fairness).

[14] See *Mapp v Ohio*, 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961) (the Fourth Amendment's exclusionary rule was made applicable to the states), *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799

Other than in matters relating to marriage, family, procreation, and the right to bodily integrity, the Court has been reluctant to expand the scope of substantive due process beyond the explicit textual source of constitutional protection. *Albright v Oliver*, 510 US 266, 272; 114 S Ct 807; 127 L Ed 2d 114 (1994). Rather than approaching issues of restriction of government authority in areas of criminal proceedings from the unstructured perspective of "whether, in the view of the Court, the governmental action in question was 'arbitrary,'" *id.*, the Court has deemed restriction of government authority appropriately encompassed by the remedy the framers of the Bill of Rights created.

Although it is unclear at this stage whether the Court will ultimately conclude that substantive due process has been supplanted by specific provisions of the Bill of Rights, see *Lewis v Sacramento Co*, 98 F3d 434 (CA 9, 1996), cert gtd 520 US 1250; 117 S Ct 2406; 138 L Ed 2d 173 (1997), it is clear that the Court will not rely on substantive due process to sanction new remedies that duplicate the protections of specific constitutional provisions. Thus, in *Graham v Connor*, 490 US 386; 109 S Ct 1865; 104 L Ed 2d 443 (1989),

---

(1963) (the Sixth Amendment's right to counsel was made applicable to the states), *Malloy v Hogan*, 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964) (the Fifth Amendment's privilege against self-incrimination was made applicable to the states), *Klopfer v North Carolina*, 386 US 213; 87 S Ct 988; 18 L Ed 2d 1 (1967) (made applicable the Sixth Amendment speedy trial right), *Washington v Texas*, 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967) (made applicable the right to compulsory process), *Duncan v Louisiana*, 391 US 145; 88 S Ct 1444; 20 L Ed 2d 491 (1968) (made applicable the Sixth Amendment right to trial by jury), and *Benton v Maryland*, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969) (applied the Double Jeopardy Clause of the Fifth Amendment to the states). For an overview of the rights that have been incorporated and the rationale for incorporation, see Tribe, American Constitutional Law (2d ed), § 11-2, p 772.

the Court refused to recognize a constitutional remedy under 42 USC 1983 on the basis of the assertion that the use of excessive force in making an arrest constituted a violation of substantive due process. The Court held that the remedy for a claim of excessive force during arrest must be determined with reference to the Fourth Amendment as the explicit constitutional standard protecting the asserted interest, rather than the abstract claim of a violation of substantive due process.[15]

In *Collins v Harker Heights, supra,* the Court again underscored its reluctance to expand the doctrine of substantive due process, explaining:

> As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. . . . The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field. [*Id.* at 125.][16]

In *Albright v Oliver, supra* at 268-271, the Court similarly declined to recognize a substantive right of

---

[15] The Court held:

Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims. [*Graham, supra* at 395.]

[16] In *Collins,* the Court rejected the petitioner's claim under 42 USC 1983 that municipal employees had a right under the Fourteenth Amendment Due Process Clause to be free from unreasonable risks of harm in the workplace. The Court noted its reluctance to expand the doctrine of substantive due process, stating that Congress intended the Due Process Clause to prevent the government from arbitrarily exercising its power, not to guarantee minimal levels of safety and security in the workplace. *Id.* at 126.

due process to be free from criminal prosecution except upon probable cause. Because the first step in alleging a constitutional violation is to identify the specific right infringed, the Court began by reiterating that substantive due process rights have for the most part accorded to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272. Although the lead opinion was signed by only a plurality of the justices, a majority of the Court joined in the rationale limiting the scope of substantive due process on the ground that

> [w]here a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing th[e] claims." [*Id.* at 273, quoting *Graham v Connor, supra* at 395.][17]

V

The contention that the Court should infer a remedy precluding retrial because of "the anxiety, stress, humiliation, and cost to the defendant of continual reprosecution where no new evidence exists"[18] is a

---

[17] See Wells, *Constitutional torts, common-law torts, and due process of law,* 72 Chi-Kent L R 617, 643 (1997) (the Court in *Graham, Albright,* and *Collins* does not propose to abandon substantive due process, only to avoid it whenever possible).

[18] 219 Mich App 134.

To support his position defendant relies on *Green v United States,* 355 US 184, 187-188; 78 S Ct 221; 2 L Ed 2d 199 (1957), in which the Supreme Court stated:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compel-

general claim of governmental unfairness. "Every prosecution . . . 'is a public act that may seriously . . . disrupt [the defendant's] employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends,' " *Albright, supra* at 296 (Stevens, J., dissenting), quoting *United States v Marion*, 404 US 307, 320; 92 S Ct 455; 30 L Ed 2d 468 (1971).[19] Further, if recognized, guidelines for respon-

---

ling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

The rationale of *Green* is inapposite because *Green* involved not a case of continuing jeopardy, as is involved here, but rather a case of double jeopardy. Moreover, the Supreme Court expressly recognized that jeopardy does not bar a second trial under circumstances where a jury has failed to reach a verdict, stating:

At the same time jeopardy is not regarded as having come to an end so as to bar a second trial in those cases where "unforeseeable circumstances . . . arise during (the first) trial making its completion impossible, such as the failure of a jury to agree on a verdict."

[19] See also *United States v MacDonald*, 456 US 1; 102 S Ct 1497; 71 L Ed 2d 696 (1982), in which the Court identified the interests served by the Speedy Trial Clause of the Sixth Amendment. The Court stated:

"Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." . . . The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. . . . Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. [*Id.* at 8-9.]

sible decision making in applying the new remedy
would be scarce and open-ended. If three trials are
too many under substantive due process, why are not
two? It could follow that either any retrial after a mis-
trial is barred as a violation of substantive due pro-
cess, or that the theory as applied would result in
arbitrary assertion of judicial authority.

VI

The relationship between federal and state govern-
ments and that of the state judiciary to its coordinate
branches are obviously different. The common con-
cern is the reach and contours of assertion of the
power to declare "arbitrary" the conduct of govern-
ment actors. While the focus of this Court's concern
regarding expansive interpretation of our authority
has been expressed in terms of separation of powers,
rather than the powers reserved for the states under
the Tenth Amendment, we have also cautiously
responded to requests to recognize new remedies that
would limit the authority of the executive or legisla-
tive branches of government. We declined the invita-
tion to expand judicial authority in *People v Mateo*,
453 Mich 203, 211; 551 NW2d 891 (1996). There, we
abstained from deciding whether the harmless error
statute was a legislative attempt to supplant judicial
authority. We refused to require compliance with sen-
tencing guidelines because the Legislature had not
mandated such compliance, *People v Milbourn*, 435
Mich 630, 656-657; 461 NW2d 1 (1990), and rejected
the claim that circuit courts have the authority to
nolle prosequi a case. *People v Curtis*, 389 Mich 698,
711; 209 NW2d 243 (1973). "[A]s long as jeopardy has
not attached, or the statute of limitations not run, our

law permits a prosecutor to reinstate the original charge on the basis of obtaining a new indictment and thus beginning the process anew." *Id.* at 706. See also *People v Gallego*, 430 Mich 443, 452; 424 NW2d 470 (1988) (enforcing an unauthorized promise by the police not to prosecute would undermine the prosecutorial function); *Employees & Judge of the Second Dist Court v Hillsdale Co*, 423 Mich 705, 723; 378 NW2d 744 (1985) (an administrative order to compel funding in excess of appropriations is an improper exercise of judicial power); *Genesee Co Prosecutor v Genesee Circuit Judge*, 391 Mich 115; 215 NW2d 145 (1974) ; *Genesee Co Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 683; 194 NW2d 693 (1972). Const 1963, art 3, § 2 provides:

> The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.

We hold that in dismissing this case in the circumstances here presented, the trial judge violated the doctrine of separation of powers.

The amorphous claim endorsed by the trial court and the Court of Appeals would inevitably call for courts to decide what policy of retrial is best for all the people of Michigan. In words equally appropriate to the relationship between the branches of state government and our citizens, Judge Easterbrooke has observed:

> Which policy is best for the people . . . is a complex question, answered different ways at different times in this nation (and in dramatically different ways by different

nations today)—but it is a question about moral and effi-
cient law enforcement for the people to debate and resolve.
It is not a question whose only answer must be given by the
judicial branch on the basis of "substantive due process."
[*Mays v East St Louis*, 123 F3d 999, 1003 (CA 7, 1997).]

Finally, absent a violation of the constitution or
specific statutory authority, we are not persuaded
that we have the authority or the wisdom to monitor
the performance of the elected prosecutor. Nor has
the case been made that harm to an interest not
addressed by specific provisions of the Bill of Rights
requires a new remedy. Whatever the reach of sub-
stantive due process, this claim does not approach
the threshold.[20] In this context, we find no historical,
textual, or empirical foundation that requires inferring
a new remedy from the penumbras of substantive due
process.

VII

For the reasons stated, we hold that the reprosecu-
tion of this defendant is not a violation of the due
process guarantees of the Michigan and United States
Constitutions, Const 1963, art 1, § 17, and US Const,

---

[20] We take judicial notice of the facts of *People v Fisher*, 220 Mich App
133; 559 NW2d 318 (1996), in which the defendant was tried four times
before pleading no contest to charges that he murdered his wife. The
defendant was twice found guilty of the death of his wife, who was found
wrapped with duct tape in their home. Both convictions were overturned.
*People v Fisher*, 439 Mich 884 (1991). In the defendant's third trial, a mis-
trial was declared when the jurors were unable to reach a verdict. In a
fourth trial, yet another mistrial was declared because of jury deadlock.
The defendant entered a plea of no contest as the prosecutors prepared to
try the defendant a fifth time. Were the retrial of the respondent in the
instant case foreclosed because of substantive due process guarantees,
arguably all retrials where two mistrials were previously declared and
where no new evidence was offered against the accused would also be
foreclosed.

Am XIV.  Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded for further proceedings.

MALLETT, C.J., and BRICKLEY, WEAVER, and TAYLOR, JJ., concurred with BOYLE, J.

CAVANAGH, J. (*dissenting*). The majority's opinion today attempts to reach a conclusion that decides far more than the case before us. Instead of merely focusing on the task at hand, the majority seeks to effectively sound a death knell for the concept of substantive due process under Const 1963, art 1, § 17, and, for that matter, the Fourteenth Amendment of the United States Constitution, in the law of Michigan. Because I cannot agree with the majority's result, or support its far-ranging dicta, I dissent.

I

In *People v Thompson*, 424 Mich 118; 379 NW2d 49 (1985), we were presented with the question whether a retrial, following a mistrial because of deadlocked jury, which itself followed the reversal of a jury conviction for legal error, violated, inter alia, the defendant's due process rights. We found that, "[w]hile there may be cases in which repeated retrials after repeated jury deadlock might be so fundamentally unfair as to violate the due process guaranteed by Const 1963, art 1, § 17, or the Fourteenth Amendment to the United States Constitution, this case [was] not one of them." *Id.* at 133.

In this case, the trial court, relying on our guidance in *Thompson*, believed that such a case was before it, and dismissed the charges against the defendant following two successive trials that resulted in jury

deadlock. The majority, rather than simply correcting the perceived error in the trial judge's application of *Thompson*, instead beats a wholesale retreat from it, and effectively holds that, in fact, there can never be a case such as we contemplated in *Thompson*.[1]

II

Defendant was the owner of a sports equipment store in Garden City. After about six months in business, he increased his insurance coverage on the contents of the store from $50,000 to $75,000. Two weeks later, on June 27, 1990, there was a fire at the store. Defendant left the store at approximately 4:15 P.M. to visit relatives out of town. The fire was reported at 7:15 P.M., and investigators determined it had been smoldering for a couple of hours. Defendant's store suffered considerable damage, and adjacent businesses suffered smoke damage.

The investigation revealed no sign of illegal entry, and burn patterns of flammable liquid appeared on the floor in the area of the fire's origin. At both trials, the defendant pointed out that charcoal grills and

---

[1] I note that the author of *Thompson* is also the author of the majority opinion today. While the majority dismisses the quoted passage of *Thompson* as dicta, I should make two points. The first is that I argue not that this portion of *Thompson* is controlling, but rather, that prudence indicates that we take the same course as we did then, i.e., again, if this is not such a case, it still remains possible one might come before us.

Second, to the extent those in the majority would dismiss this language as merely ill-advised dicta, an assertion I disagree with, I note they still insist on attempting to stretch the instant opinion to cover a variety of situations not before the Court. To the extent one credits the majority's disregard of nearly all the analysis included in part III of *Thompson*, to be at all consistent, one would have to seriously question the inclusion of at least parts IV through VI of the majority's opinion, all of which are unnecessary to the decision today, as it is already controlled by the analysis in parts II and III of the majority's opinion.

lighter fluid were stored in this area, and argued that
the investigators had not adequately tested to rule out
those items as the cause of the markings.

The defendant was charged with one count of burn-
ing of real property[2] and one count of burning of
insured property.[3] Defendant has apparently been out
on bond throughout the proceedings. Defendant's first
trial occurred in June 1993 in Detroit Recorder's
Court with Judge Andrea J. Ferrara presiding. The
trial lasted over parts of ten days. The prosecution
apparently produced five expert witnesses, and the
defense produced two. The jury could not reach a
unanimous verdict, with the jury split ten to two or
eight to four in favor of conviction.

The defendant was retried in February 1994, with
Judge Samuel A. Turner presiding. The trial lasted
approximately the same amount of time as the first,
and similar expert witnesses were called by both
sides. The jury again deadlocked, this time six to six.

The prosecution announced its intention to again
retry the defendant. The defendant moved to dismiss,
arguing the likelihood of yet another hung jury and
that he would suffer substantial prejudice if retried
again.

The motion was heard August 5, 1994, before
Recorder's Court Chief Judge Dalton A. Roberson.[4]
Defense counsel argued that witnesses' memories

---

[2] MCL 750.73; MSA 28.268.

[3] MCL 750.75; MSA 28.270.

[4] While the motion was argued by the same defense counsel and assis-
tant prosecutor as appeared in the second trial (neither of whom had par-
ticipated in the first trial), it was argued before Chief Judge Roberson,
whose only prior involvement with the case was in hearing some pretrial
motions. While, ordinarily, the judge who presided at trial would be in the
best position to evaluate complaints such as those presented by the

were growing dim, and that defendant had twice been defended by retained counsel and had been forced to retain expert witnesses. The trial court agreed, and dismissed the charges, citing, among other things, the substantial financial prejudice to the defendant. The trial court ruled both on the record and in a written opinion, citing *Thompson*.

The prosecutor appealed in the Court of Appeals, which affirmed in a published opinion.[5] A separate opinion agreed with the Court's underlying holding that a due process analysis applied in this situation, but dissented on its application to the instant facts.[6]

III

While the majority quotes a collection of familiar authority regarding the common woes that befall a defendant who is charged with a crime under any circumstances, no mention is made of the peculiar facts of this case. The defendant was charged with the crime commonly referred to as arson. There was no direct evidence linking him to the fire, and the only indirect evidence that stood for the proposition that a crime had even been committed was the burn patterns on the floor, which indicated the presence of flammable liquids. The defendant came forward with evidence that flammable liquids were routinely stored in this area. This set the stage for a battle of expert witnesses in the field of fire cause and origin.

This case turned entirely on expert testimony. If the jury believed the prosecution's experts, a crime had

---

defendant, it appears the Chief Judge here demonstrated adequate familiarity with the prior proceedings in this matter.

[5] 219 Mich App 127; 555 NW2d 728 (1996).

[6] *Id.* at 136, MCDONALD, J. (concurring in part and dissenting in part).

occurred, and the defendant was the most logical suspect.[7] If, however, the jury believed the defense experts, no crime had even occurred. In a case such as this, the availability of expert testimony is crucial. While the state has available to it numerous experts in the field of fire cause and origin, the defendant must turn to the private sector, where the rule of supply and demand favors high expert witness fees.

It is here I see a difference between this case and those authorities cited by the majority. It is without dispute that one who is charged with a crime will incur substantial attorney costs. Those who cannot afford an attorney are, of course, provided with assigned counsel. But while the appointment of necessary defense experts is required by statute,[8] given the majority's past hostility toward the appointment of expert witnesses for the defense,[9] I would not fault the defendant for finding no comfort in the slight possibility of obtaining appointed experts.

As the Court said in *Thompson*, due process is violated where there is a " 'failure to observe that fundamental fairness essential to the very concept of justice.' "[10] Because I cannot subscribe to the majority's implication, throughout the dicta contained in part IV of its opinion, that such a concept has no place in the

---

[7] Recall, however, that the defendant also presented an alibi defense.

[8] MCL 775.15; MSA 28.1252.

[9] See *People v Jacobsen*, 448 Mich 639; 532 NW2d 838 (1995), where the Court, over the dissent of Justice Levin and this author, peremptorily reversed a decision of the Court of Appeals, which, over the dissent of another of my brethren when he was sitting on that Court, required the appointment of an expert witness in a case where the expert's testimony was the sole avenue available for the defense to dispute the offense charged.

[10] *Thompson* at 133, quoting *Dodge v Detroit Trust Co*, 300 Mich 575, 618; 2 NW2d 509 (1942).

criminal law of this state, I would apply a due process analysis here.

IV

Likewise, the majority's effort regarding the purported applicability of the Fifth Amendment's guarantee against double jeopardy to exclude any due process protection strikes me as misguided. The protection provided in the guarantee against double jeopardy is twofold. "The Clause secures the defendant's interests in (1) the finality of judgments, and (2) protection against multiple prosecutions." *People v Anderson*, 409 Mich 474, 482-483; 295 NW2d 482 (1980).

While this case certainly involves multiple prosecutions, the application of the due process analysis is not to the multiple prosecutions per se, but to the underlying result—will the defendant receive a fair trial? In this case, I am convinced that while yet another trial or two may eventually result in the defendant's conviction, there is far too great a likelihood that such a result will directly follow the defendant becoming financially unable to retain experts of sufficient qualifications and capabilities as to adequately advance his theory of the case. The end to the concept of trial by ordeal long predates the law of our state, and I find it to be fundamentally unfair to return to it here.

V

The majority, after misconstruing the underlying issue and attempting to insure that this Court never again faces another claim of a substantive due process in a criminal case, continues still further, finding

a violation of the doctrine of separation of powers. It does so following a lengthy list of citations, but scant analysis.[11]

Again, I find this unpersuasive. The majority believes that "absent a violation of the constitution or specific statutory authority, we are not persuaded that we have the authority or the wisdom to monitor the performance of the elected prosecutor." *Ante* at 533. While this Court has often made it clear that there are aspects of a prosecutor's role where the judicial branch has no call to intervene,[12] I question the "wisdom" of the majority's statement.

Is the Court saying that, absent a specific violation of a specific constitutional provision, it has absolutely no right or duty to insure that a defendant receives a fair trial, or to prevent the prosecution from engaging in egregious conduct? It seems to me that, in actuality, our inherent constitutional authority to oversee the practice and procedure in our courts, Const 1963, art 6, § 5, must include some measure of requiring fairness in proceedings. I do not believe that, when one party is the prosecutor, the doctrine of separation of powers requires us to relinquish the inherent con-

---

[11] I pause to take issue with my sister BOYLE's favorite (mis)quote of *People v Milbourn*, 435 Mich 630, 656-657; 461 NW2d 1 (1990), stating that we refuse to require compliance with the sentencing guidelines because the Legislature has not mandated such compliance. If one merely, instead of reading only the sentence quoted, continues on to the following sentence and paragraph, it is apparent that the entire discussion concerned the fact that we, of course, have always allowed departures from the sentencing guidelines. We have, however, certainly required their use. See Administrative Order No. 1988-4. My sister continues in her confusion between the federal guidelines and Michigan's, at least as far as the concept of "require[d] compliance" is concerned.

[12] See *Genesee Co Prosecutor v Genesee Circuit Judge*, 391 Mich 115; 215 NW2d 145 (1974); *Genesee Co Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972) .

trol we maintain over the conduct of litigants before
our courts.

As we noted in *Anderson*, when only one of the
interests protected by the Double Jeopardy Clause is
implicated, we engage in a balancing of the defend-
ant's and the state's interests. *Id.* at 483-484. Under
the majority's analysis, it would seem that, because
there is not a complete violation of a specific consti-
tutional provision, we could not do such a thing. I
cringe at the volume and breadth of precedent poten-
tially impinged by such an analysis, and take solace
only in the fact that it is included in repetitive and
cumulative dicta.[13]

---

[13] Before I depart from this section of the majority's opinion, I note the
context of the lengthy quotation from *Mays v East St Louis*, 123 F3d 999,
1003 (CA 7, 1997), purported to be "equally appropriate to the relation-
ship between the branches of state government and our citizens." *Ante* at
532. While the quotation proclaims the virtue of majority rule over court
decisions of substantive due process, *Mays* involved a claim of due pro-
cess violations by injured and killed passengers in a vehicle that crashed
while fleeing from a high-speed police pursuit. The context of the quota-
tion is a discussion of weighing the dangers of a police pursuit with the
dangers of letting criminals escape. I fail to see the parallel between this
and anything decided today, other than perhaps an inclination, apparently
shared by the majority, to assault the very concept of substantive due pro-
cess on every ground imaginable.

I also question the presence of *People v Fisher*, 220 Mich App 133; 559
NW2d 318 (1996). The majority's opinion takes "judicial notice" of the
facts of this rather severe case. The defendant, a physician, was twice
found guilty of the death of his wife, who was found wrapped in duct tape
in their home. Both convictions were overturned. Two subsequent trials
resulted in deadlocked juries. The defendant pleaded no contest just
before a fifth trial. The opinion states that a holding for the defendant
would mean that, arguably, all retrials where two mistrials have occurred
would be prevented. Defendant did not argue this, neither the trial court
nor the Court of Appeals held this, and I do not believe even the prosecu-
tion forecast this gloomy scenario, which would seem objectionable to all
and would require as severe an abdication of any analysis of substantive
due process as the majority undertakes today, but in the opposite direc-
tion. I certainly endorse no such thing.

VI

The majority cites *People v Dawson*, 431 Mich 234;
427 NW2d 886 (1988), as not allowing the prosecutor
to "retry a defendant after having one full and fair
opportunity at obtaining a conviction." *Ante* at 525. I
agree, and recall our unanimous decision in that case,
which, in adopting this view, reasoned, "[o]therwise,
the state could repeatedly prosecute persons for the
same crime, transforming the trial process itself into
a punishment and effectively punishing the accused
without his having been adjudged guilty of an offense
meriting punishment." *Dawson* at 250-251. Where, as
here, the prosecution had not one, but two "full and
fair" opportunities to obtain a conviction, and, admit-
tedly, came forward for a third effort with no new
evidence, the line marking that transformation of the
trial process into an ongoing punishment was
crossed.

I would analyze this case in accordance with our
past decisions, and, in this case, find that a third
retrial would be so prejudicial to the defendant as to
violate his right to due process on these particular,
and unusual, facts. I find the remainder of the major-
ity's opinion to be both unnecessary and unpersua-
sive. I dissent.

KELLY, J., concurred with CAVANAGH, J.