NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0528n.06

No. 23-1165

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOANNE MOSKOVIC, et al.,

    Plaintiffs - Appellants,

v.

CITY OF NEW BUFFALO, MICHIGAN,

    Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN


OPINION

---

Before: GIBBONS, BUSH, and DAVIS, Circuit Judges.

JOHN K. BUSH, Circuit Judge. The City of New Buffalo, Michigan (the City) restricted property owners from using properties within certain zoning districts as short-term rentals (STRs), that is, a rental of less than thirty consecutive days. The City first imposed a moratorium on issuing STR permits and then prohibited STRs within those districts entirely. Plaintiffs, who wish to use their properties as STRs, challenged the City's actions as unconstitutional and contrary to Michigan law. The district court granted summary judgment for the City on those claims, concluding that Plaintiffs lacked a protected property interest. For the reasons discussed below, we **AFFIRM** the district court.

**I.**

According to Plaintiffs, they purchased the properties here intending to use them as STRs. Each home fell within zoning districts—almost entirely the R-1, R-2, and R-3 zoning districts—

that permitted single-family detached dwelling units. Until 2019, the City's zoning ordinance did not specifically address STRs, although it banned all uses that it did not specifically authorize.

In April 2019, the City passed Ordinance 237. It required property owners who wished to use their homes as STRs to acquire a permit after satisfying certain prerequisites. But on May 18, 2020, the city council imposed a moratorium on the issuance of new STR permits, even if an applicant satisfied those prerequisites. Also, during the moratorium, the city council adopted Ordinance 248, which amended Ordinance 237 to add additional permitting requirements. Even though Plaintiffs eventually met these requirements, they did not apply for an STR permit until after the City had imposed the moratorium. Thus, they never received the requisite permit. The city council ultimately extended the moratorium until December 13, 2021.

On November 23, 2021, after government deliberations and public hearings, the city council adopted Zoning Ordinance 253, which generally banned STRs in R-1, R-2, and R-3 zoning districts, dating back to May 18, 2020. Zoning Ordinance 253 took effect on December 13, 2021. However, section 20-8 of Zoning Ordinance 253 allowed nonconforming STRs "that existed and were registered under Chapter 11 of the Code of Ordinances as of November 23, 2021" to continue their nonconforming use if they conformed with other regulations. Zoning Ordinance 253, R. 117-10, PageID 3690.

## II.

In response to the moratorium, Plaintiffs sued the City in separate actions, which the district court later consolidated. In December 2021, Plaintiffs filed the operative complaint, which asserted (among other claims) that the City violated the Michigan Zoning Enabling Act (MZEA), Plaintiffs' substantive due process rights under the United States and Michigan Constitutions, and the takings clauses of those charters. The parties cross-moved for summary judgment in June

2022—the City on all counts and Plaintiffs on their substantive due process and equal protection claims. In October 2022, the district court granted partial summary judgment to Plaintiff 218 S. Bronson, LLC on its equal protection claim, but granted partial summary judgment to the City on all remaining claims. Plaintiffs moved for reconsideration of that order, which the district court denied. The district court then dismissed the consolidated actions, and Plaintiffs timely appealed.

### III.

We review a grant of summary judgment de novo. *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this analysis, the court "must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (citing *Anderson*, 477 U.S. at 255).

### IV.

Plaintiffs appeal the district court's grant of summary judgment for the City on their substantive due process, regulatory takings, and MZEA claims.

#### A.      Substantive Due Process Claims

Both the United States and Michigan Constitutions protect individuals from government deprivation of certain property interests without due process of law. U.S. Const. amend. XIV; Mich. Const. art. 1, § 17. Due process clauses implicate both procedure and substance. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). This appeal concerns only its substantive component.

"[S]ubstantive due-process claims raised in the context of zoning regulations require a plaintiff to show that . . . a constitutionally protected property or liberty interest exists." *Id.* at 855 (internal quotation marks and citation omitted) (addressing a claim under the federal due process clause); *see Cummins v. Robinson Twp.*, 770 N.W.2d 421, 438 (Mich. Ct. App. 2009) (stating that Michigan's due process clause "is coextensive with its federal counterpart") (citing *People v. Sierb*, 581 N.W.2d 219, 221 (Mich. 1998)). The existence of a protected property interest here turns on state law, but "*federal constitutional law* determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *EJS Props.*, 698 F.3d at 855–56 (internal quotation marks omitted) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005)). Plaintiffs argue that they had two protected property interests: (1) an interest in the nonconforming use of their properties as STRs and (2) an interest in receiving STR permits for which they applied. We address each below.

### 1. Do Plaintiffs have a protected property interest in the nonconforming use of their properties as STRs?

We first consider whether the City's original zoning ordinance (i.e., the ordinance in effect before Zoning Ordinance 253) permitted STRs, such that Plaintiffs possessed a vested right to their nonconforming use. Under Michigan law, a "prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date." *Heath Twp. v. Sall*, 502 N.W.2d 627, 629 (Mich. 1993). "In other words, it is a lawful use that existed before the restriction, and therefore continues after the zoning regulation's enactment." *Id.* "Once a nonconforming use is established, a subsequently enacted zoning restriction, although reasonable, will not divest the property owner of the vested right." *Id.* The MZEA also guarantees a prior lawful nonconforming use. Mich. Comp. Laws Ann. § 125.3208(1) (West 2010).

To determine whether a prior lawful nonconforming use vested, we interpret the relevant zoning law using the rules of statutory construction. *Brandon Charter Twp. v. Tippett*, 616 N.W.2d 243, 245 (Mich. Ct. App. 2000); *see Golf Vill. N. LLC v. City of Powell*, 826 F. App'x 426, 434 (6th Cir. 2020) (applying state statutory construction law to interpret a zoning ordinance). If the zoning ordinance's language "is clear and unambiguous, the courts may only apply the language as written." *Tippett*, 616 N.W.2d at 245.

> Under the zoning ordinance in effect before Zoning Ordinance 253,

> [a]ll land development specifically listed under the heading "Uses Permitted by Right" shall be allowed when determined to be in accordance with all provisions of this ordinance and all other applicable laws, regulations or ordinances having jurisdiction over the proposed use of land. *Where not specifically permitted, uses are prohibited*, unless construed to be similar to a use as expressly determined in accordance with Section 1-4G.

Zoning Ordinance § 1-4E, R. 121-2, PageID 5126 (emphasis added). We apply this ordinance first by determining whether an STR is specifically listed under "Uses Permitted by Right." It is not. Therefore, under the ordinance, we must determine whether an STR is similar to a property use that Section 1-4G expressly permits.

Section 1-4G provided a process for classifying uses not specifically mentioned under the "Uses Permitted by Right" heading. *Id.* § 1-4G, R. 121-2, PageID 5126–27. Under this heading, the City's original zoning ordinance permitted owners to use properties in R-1, R-2, and R-3 zoning districts as "[s]ingle-family detached dwelling units." Zoning Ordinance Arts. 6-8, R. 120-4, Page ID 4814–20. The original zoning ordinance defined "dwelling," "single-family dwelling," and "family" as follows:

> DWELLING — A detached building or portion thereof designed or used exclusively as the home, residence or sleeping place of one or more persons, not including accessory buildings or structures, either attached or detached.
> . . .

> DWELLING, SINGLE-FAMILY — A detached building, designed for or occupied exclusively by one family.
>
> . . .
>
> FAMILY —
>
> A.      An individual or group of two or more persons related by blood, marriage, or adoption, together with foster children and servants of the principal occupants who are domiciled together as a single housekeeping unit in a dwelling unit; or
>
> B.      A collective number of individuals domiciled together in one dwelling unit whose relationship is of a continuing, non-transient domestic character and who are cooking and living as a single nonprofit housekeeping unit. This definition shall not include any society, club, fraternity, sorority, association, half-way house, lodge, coterie, organization, group of students, or other individual whose domestic relationship is of a transitory or seasonal nature, is for an anticipated limited duration of school term or during a period of rehabilitation or treatment, or is otherwise not intended to be of a permanent nature.

Zoning Ordinance § 2-3, R. 120-4, Page ID 4775–4776. Plaintiffs contend that using their properties as STRs reflects this permitted use because (1) "dwelling" does not prohibit temporary occupancy of the structure, (2) each contested property is designed to be occupied by a single family, and (3) "domicile" as used in the definition of "family" does not necessarily include a permanent occupancy requirement.

In its order on the motion to reconsider,[1] the district court concluded that STRs fail to meet this permitted use because the original zoning ordinance required property owners to use properties within the R-1, R-2, and R-3 zoning districts as domiciles, as reflected in the definition of "family,"

---

[1] Plaintiffs did not specifically make the text-based argument described above until their motion to reconsider, so the City argues that Plaintiffs waived it on appeal. The "traditional rule" for addressing on appeal precise issues not raised below is that once "a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995). Plaintiffs have consistently claimed that they possess a vested right to use their properties as STRs before the adoption of Zoning Ordinance 253, so they did not waive this issue.

and residentially,[2] not commercially. The original zoning ordinance defined neither "domicile" nor "residential." But Michigan courts define "domicile" as "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Grange Ins. Co. of Mich. v. Lawrence*, 835 N.W.2d 363, 372 (Mich. 2013) (internal quotation marks and citation omitted). And Michigan courts have defined "residence" in STR contexts as "exclud[ing] uses of a transitory nature." *Concerned Prop. Owners of Garfield Twp., Inc. v. Charter Twp. of Garfield*, No. 342831, 2018 WL 5305235, at *3 (Mich. Ct. App. Oct. 25, 2018) (citing *O'Connor v. Resort Custom Builders, Inc.*, 591 N.W.2d 216, 220–221 (Mich. 1999)). The inherent transitory nature of STRs means that their occupants do not use them as domiciles or residentially under these definitions, so the original zoning ordinance's text alone excludes STRs as permitted uses in R-1, R-2, and R-3 zoning districts.[3]

Notwithstanding this textual prohibition, Plaintiffs argue that the City issued 93 STR permits in the R-1, R-2, and R-3 zoning districts under Ordinances 237 and 248, which shows that the City interpreted the original zoning ordinance to permit STRs in these districts. But those ordinances require a permit to use a property as an STR, and it is undisputed that Plaintiffs never received any of those 93 permits. Thus, although Ordinances 237 and 248 allowed owners to use their properties as STRs with a permit, Plaintiffs never received a permit to vest their right to use their properties as STRs.

---

[2] The stated purpose for each of these zoning districts is residential use. *Tippett*, 616 N.W.2d at 245 (stating that courts follow the rules of statutory construction "to give effect to the legislative body's intent").

[3] Plaintiffs argue that adopting the district court's reasoning would erroneously omit "cabins, cottages, lake house, and other non-homestead properties in the city" from the Zoning Ordinance. Appellants' Br. at 40. But the Supreme Court of Michigan has more broadly defined "residence" as having "a permanent presence" rather than permanent occupancy, which would include those non-homestead properties. *O'Connor v. Resort Custom Builders, Inc.*, 591 N.W.2d 216, 221 (Mich. 1999). For that same reason, the commercial use provided for R-3 apartment rentals also fits within the Michigan Supreme Court's definition of "residence."

The district court therefore correctly interpreted the original zoning ordinance: it prohibited all uses that it did not expressly permit. And using the contested properties as STRs without a permit was not a permitted use. As a result, Plaintiffs lacked a protected property interest in the nonconforming use of their properties as STRs.[4]

### 2. Do Plaintiffs have a protected property interest in receiving STR permits for which they applied?

Plaintiffs also argue that they possessed a substantive due process right to receive permits for which they applied, because Ordinances 237 and 248 required the City to issue an STR permit if the applicant complied with the permitting requirements. Ordinance 237 § 11-4C, R. 13-2, PageID 312 (stating that "a short-term rental unit permit shall be granted" if applicants complied with regulatory requirements); Ordinance 248 § 11-3(D), R. 41-7, PageID 1200 (same). But first-time applicants for a permit lack a protected property interest in that permit. *Wojcik v. City of Romulus*, 257 F.3d 600, 609–10 (6th Cir. 2001) (explaining that, under Michigan law, first-time applicants for liquor licenses and entertainment permits lack a constitutionally protected property interest to support a substantive due process claim); *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (concluding that a first-time applicant for a medical license lacked a "property or liberty interest in [that] license"), *abrogated in part on other grounds by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

---

[4] Plaintiffs cite testimony from the City Attorney and the City Manager, who also served as the Zoning Administrator and stood as the City's Rule 30(b)(6) deponent, expressing opinions that the original zoning ordinance permitted STRs. But those city officials' limited authority precludes their testimony from contravening what the original zoning ordinance's text provides. *See* City Charter § 4.5(b), R. 117-8, PageID 3640 (in the section defining the City Attorney's function and duties, failing to expressly authorize him to issue legal opinions that bind the City); *Mays v. LaRose*, 951 F.3d 775, 790 (6th Cir. 2020) ("Most courts don't treat concessions by Rule 30(b)(6) designees as binding.").

Plaintiffs argue that *Wojcik* and *Baird* are inapposite because they involved discretionary permitting schemes, whereas the STR permitting scheme here mandated that the City issue an STR permit once a property owner satisfied its prerequisites.[5]  But *Wojcik* and *Baird* do not discuss discretion; instead, they turn on whether a property owner already held a license.  *Wojcik*, 257 F.3d at 609–10; *Baird*, 438 F.3d at 611.  And Plaintiffs never applied for STR permits until after the City had imposed the moratorium.  *See, e.g.*, Skoczylas Aff., R. 118-2, PageID 4212 (stating that her family applied for an STR permit in "late January 2021").  Because they waited until after the moratorium was in place to apply for STR permits, Plaintiffs lacked "a legitimate claim of entitlement" to the permits to create a protected property interest in them.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) (concluding that, when the government body could deny a conditional zoning certificate even if the applicant met mandatory requirements, the applicant lacked a justifiable expectation to receive the certificate).  The moratorium enabled the City to reject permits, notwithstanding the permitting scheme established by Ordinances 237 and 248, so Plaintiffs did not have a protected property interest in receiving STRs permits when they applied.

**B.    Other Claims**

Plaintiffs also appeal the district court's grant of summary judgment for the City on their regulatory takings and MZEA claims.  Plaintiffs contend that (1) Zoning Ordinance 253 constituted a regulatory taking because it transformed their conforming use into a nonconforming

---

[5]  Plaintiffs refer to cases generally stating that an applicant would have a protected interest if they "complied with certain minimum, mandatory requirements."  *Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992); *accord Triomphe Invs. v. City of Northwood,* 49 F.3d 198, 202-03 (6th Cir. 1995); *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990).  But Plaintiffs identify no on-point, binding authority establishing that first-time applicants under a non-discretionary permitting scheme possess a vested right to receive the permit sufficient to establish a substantive due process claim.

use through prohibiting STRs and (2) section 20-8 of Zoning Ordinance 253 violated the MZEA by retroactively divesting them of a vested right to use their properties as STRs. Like their substantive due process claims, however, these claims fail because Plaintiffs did not establish that the City deprived them of a vested property interest. *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399, 412 (6th Cir. 2006) ("[D]ue process and takings claims require that the plaintiffs first demonstrate that they have a legally cognizable property interest."); *Twp. of Indianfields v. Carpenter*, No. 350116, 2020 WL 4249168, at *7 (Mich. Ct. App. July 23, 2020) (recognizing that zoning ordinances "may not destroy already-vested property interests" retroactively). Thus, the district court correctly granted summary judgment for the City on Plaintiffs' takings and MZEA claims.

## V.

In sum, Plaintiffs lacked a protected property interest in using their homes as STRs, so their substantive due process, regulatory takings, and MZEA claims fail. We therefore **AFFIRM** the judgment of the district court.